Read, J.
The proposition of fact stands thus: Kerr, being the legal owner of said four military land warrants, made sale of the land in dispute, received the purchase money, and the purchasers went into possession. The equitable title to these land warrants was in Moon’s devisees. The complainants were the purchasers from Kerr, without notice of the equitable interest. Being thus in possession, under such purchase, Moon’s devisees commenced suit against Kerr in the circuit court of the United States, to compel an assignment of said warrants, and all entries, locations, surveys, and interests in land acquired under them. Before suit was commenced, Kerr *was the legal holder of these warrants, the complainants purchasers of the land in dispute, in possession, and bad paid the consideration money under contract of sale, binding Kerr to perfect to them the legal title. Moon’s devisees were the owners in equity of said land warrants ; but the legal title to the lands in dispute was in the United States. The complainants, then, had an interest in these lands before suit was brought, and should have been parties to the suit, which was instituted to deprive both Kerr and them of all right to said warrants, and all interest in the lands now in question.
The equities of the complainants then, and of Moon’s devisees, and of Trimble, who claims under them, are equal. But Trimble’s equity is the elder, and therefore better, and must prevail unless the junior equity has protected itself by clothing itself with the legal title. This' the junior equity has done, by patents to the complainants from the United States for the lands in dispute. But this.was done after suit commenced in the circuit court; and hence it is contended that the doctrine of lis pendens will deprive it of that advantage. An innocent purchaser, without notice of an outstanding equity, holding the legal title, will prevail'. But, pending suit to compel the legal title, if a person buy of the trustee, and take the legal title, although having no actual notice of the *339 outstanding equity, the law charges him with such notice, and forbids him from taking any benefit from such purchase, from a principle of necessity, that the right to the very matter in dispute cg,n not be changed between the commencement and termination of the suit. If this were permitted, the trustee could always defeat the cestui que trust, by divesting himself, when sued, of the legal title. But this doctrine does not apply to persons who had an interest in the subject matter before suit commenced, and who should have been made parties. If such persons are not made parties, they may proceed, having an equity before suit, to clothe themselves with the legal title; because, having an interest before suit commenced, and being necessary parties, and not having been made such, neither equity nor the ^doctrine of Us pendens forbids them to protect themselves by acquiring the legal title. If it did, they would be affected by a suit to which they should have been parties, but were not without a day in court, to present their interest and claim their right. Hence, in such case, persons who should have been made parties, may proceed precisely as' though no such suit existed.
In this case the legal title to the lands in dispute was in the United States, and the complainants, by contract of purchase, had acquired an interest in these lands, as far as Kerr was concerned; and, having taken possession, paid the purchase money, and made improvements, Kerr was bound to secure to them the legal title. The lands being unlocated at the time, the contract required Kerr to take all necessary steps, by location, entry, and survey, to procure the title from the United States. This was the understanding of the parties, Kerr then being in possession of these warrants, and having the power to fulfill his contract; hence they acquired not only an equitable interest in the land, but the equitable right to have that land secured by the warrants in Kerr’s possession. In some of the cases now under consideration, tbe title under the contract was completed as far as entry, location, and survey, before said suit in the circuit court; but in others, entry, location, and survey were had after suit, and all the patents were procured after said suit. Thus, it will be perceived that no mere equitable interest was acquired from Kerr after suit was commenced. Hence complainants were not intruders after suit commenced, and they had, therefore, the perfect right to proceed and protect themselves by obtaining the legal title by procuring pat *340 ents, and equity will not deprive them of that advantage. It is quite certain that this reasoning is conclusive as to those instances whore the location, entry, and survey were had before suit brought in the circuit court. But counsel contend that in those instances where entry, location, and survey were had after said suit, there is a difference, and that those instances must come within the doctrine of lis pendens; *that the legal title to the warrants was in Kerr, and the. land he contracted to sell, unappropriated and disconnected with said warrants, until after suit. There appears to be some difficulty in this view, but if there is, it operates both ways; because, if these lands were in no sense connected with the warrants before suit brought, the decree for the transfer of the legal title in the warrants could not affect the land; and if it was sought to claim the lands upon the ground that the warrants bad been attached to it after suit, by entry, location, survey, and patent, those facts should have been brought before the court by supplemental bill, and the persons in possession of those lands, prior to such supplemental bill, should have been made parties, but no such thing was done. Hence, in that view,-the decree of the United States court would not deprive them of their land. But these warrants, so far as these purchasers are concerned, can not be viewed as disconnected with these lands ; or rather, these purchasers can not be regarded as having no interest in the warrants. They contracted with Kerr for land: Kerr possessed that which was equivalent to land, and could secure land. The contract was made with Kerr, unquestionably, in reference to these warrants. The possession of land was delivered by Kerr to the purchasers, which was unlocated, and which he had the power to appropriate and receive. He contracted to take the necessary steps to secure these lands. The whole right to them, therefore, and the right to have them appropriated, by the warrants, resulted from the contract. This contract, and purchase of the land, was made before suit in the circuit court. No new contract was made with Kerr, and no new interest was required from him after suitKerr, after the suit, simply proceeded to perfect the equity which existed against him before suit. The contract coupled the warrant with the land, and money having been paid under it, and possession of the land taken, the equitable interest in the warrants was equal to the equity of Moon’s devisees; and, it must be conceded, that if Kerr alone was *343, 344 concerned, there would be no doubt as between him and the purchasers; and Whence, if the land is to be claimed by and through Kerr’s acts, Kerr had the power to contract that these acts should go to the benefit,of the purchasers; and hence Moon’s devisees, claiming from Kerr in this manner, should have made these purchasers parties; but it may be said that there might be a secret understanding, or bargain, between Kerr and the contract purchasers, and it could not be discovered who should be parties; but such is not the casé; these parties were in possession of these lands ; this was sufficient notice, to all the world, of their rights, if these rights were, in any manner, to be affected by the suit. We can not, therefore, regard the lands and warrants as disconnected, but hold that the contract of sale conferred an equitable right in these lands, as against Kerr, to compel the legal title; and this existing before suit, the legal title acquired afterward will not be disputed.
But there is another ground which should have prevented a decree in favor of Trimble, the respondent to this bill.
These complainants were in possession of these lands as early as 1806 and 1808, and have been in possession ever since, paid the purchase money, and made valuable improvements. They have been suffered to remain quietly in possession for some thirty or thirty-four years, before suit is brought against them, to deprive them of their lands. Stale equities will not be enforced; when a party, having an equity, neglects to enforce it, for a period which would constitute a bar at law, under the statute of limitations— in analogy to the statute — it will also be barred in equity.
Decree reversed and cause remanded for hearing.