Price, J.
From the lengthy findings of fact made-by the lower court, we shall endeavor to gather and bring into a smaller compass the salient and material features of the controversy, and briefly state the-positions and attitude of the parties concerned in this, litigation.
The Pittsburgh & Western Railway Co. is the lessee of its coplaintiff, The Pittsburgh, Cleveland &. Toledo Railroad Co.; and The Pennsylvania Co. is-the lessee of its codefendant and cross-petitioner, The Pittsburgh, Youngstown & Ashtabula Railroad Co., and these lessees assert all the title, possession and rights of possession which their respective-leases confer.
All the parties hereto claim under one common-source of title — the Parmlees. The plaintiff in error,. Gariick, holds under a quitclaim deed from the Parmlees for a consideration of $1,000.00, which deed was. executed and delivered to him on January 3, 1899; while the plaintiffs in the lower court claim to hold under conveyances and certain appropriation pro *227 ceedings made and had long prior to the date of Gar-lick’s deed.
The cross-petitioners assert title through conveyances from Parmlees and their successors in the chain of title, all of Avhich Avere ■ made prior to the deed to Garlick, and under Avhich chain of title, they claim possession and occupation of the premises described in their deeds.
It seems to be true, that the interests and claims of the cross-petitioning railroad companies, are not adverse to the interests and demands of the plaintiffs, and in considering the questions involved Ave will folloAV the natural order presented by the pleadings and the arguments of counsel. Following this order Ave examine the grounds relied on by the plaintiffs for the relief they demand.
In October, 1880, the Cleveland & Mahoning Valley Railway Co., an Ohio corporation, commenced against the Parmlees, in the probate court of Mahoning county, proceedings to appropriate as right of Avay for railroad purposes the land described in the petition in this case, and other lands, and as a result of said proceedings the value of the land appropriated was found to be $13,282.50, which finding was afterwards confirmed and made a matter of record in said probate court. Subsequently, and after a dispute as to aaJio should receive the sum so found, it. was awarded to the Parmlees. Thereupon the New York, Pennsylvania & Ohio Railroad Co., instead of the Cleveland & Mahoning Valley Railway Co., -paid the money into court and at once took possession of the lands thus appropriated.
On or about July 26, 1883, the New York, Pennsylvania & Ohio Railroad Co. executed and delivered to the Pittsburgh, Cleveland & Toledo Railroad Co. .a *228 ■deed duly executed, for the lands described in the petition, and perhaps other lands, and the latter company at once took possession of the road so purchased and constructed thereon its main line of railroad, and has ever since continued in possession. The contents of this instrument are very material to the issues as we shall presently see.
On September 6, 1885, the Cleveland & Mahoning Valley Railway Co. duly executed and delivered to the New York, Pennsylvania & Ohio Railroad Co. a deed for the lands in dispute and other lands which had been appropriated under the proceedings of the year 1880.
Now, if the conveyance of July 26, 1883, from the New York, Pennsylvania & Ohio Railroad Co. to the Pittsburgh, Cleveland & Toledo Railroad Co. was a mere quitclaim, without covenant, or other obligation contained therein as an estoppel to a title which the former might subsequently acquire, the latter company is without title. But is it merely a quitclaim or general release?
We, therefore, necessarily have before us for examination the contents of this deed, and on its granting clause, and more especially on recitals and solemn covenants found therein, the conveyance of September i;6, 1885, it is claimed, inures to the title and benefit of ;the Pittsburgh, Cleveland & Toledo Railroad Co., which it received under the conveyance of July 26, 1883.
The latter deed recites a contract previously made between the grantor and grantee, wherein, among other clauses and stipulations, it is stated that the Pittsburgh, Cleveland & Toledo Railroad Co. desired to acquire for the purpose of right of way the lands pf said N. Y., P. & O. Railroad Co. defined on maps, *229 descriptions and stipulations attached thereto, and which include the tract in dispute, and that the said companies had agreed to have an amicable appropriation made between them, and for that purpose certain arbitrators had been selected and agreed upon to fix the compensation and damages to be paid by the said P. C. & T. R. R. Co. by reason of the taking of said property; and that the arbitrators had determined the compensation and damages to be $45,750.00, which sum was paid to the N. Y. P. & O. R. R. Co., the grantor. Then follows the granting clause: “Does hereby give, grant, remise, release and forever quitclaim unto said grantee, its successors and assigns forever, all such right and title as it, the grantor, has or ought to have in and to the premises hereinbefore described,” etc.
But more important is the following language, though found in the habendum clause: “To have and to hold the premises aforesaid, subject to the hereinbefore recited agreements and stipulations of the said contract of submission to arbitration, unto ■ the said grantee, the said Pittsburgh, Cleveland & Toledo Railroad Co., its successors and assigns, so that neither it, the said grantor, nor its successors or assigns, nor any other person claiming title through or under it, shall or will hereafter claim or demand any right or title to the premises herein conveyed, except as in the aforesaid stipulations provided, or any part thereof, but they and everyone of them shall by these presents, be excluded and forever barred.”
There are many other stipulations copied into this deed from the agreement to arbitrate the compensation and damages to be paid by the grantee, whicli show that more than an ordinary quitclaim deed was *230 in contemplation, and that more than such should be made. It is well enough to remember here that the parties had full knowledge, no doubt, of the appropriation proceedings instituted and completed in the year 1880, by the Cleveland & Mahoning Valley Railway Co., and that the grantor, The N. Y., P. & O. R. R. Co., had paid the Parmlees the $13,232.50 found due them in that proceeding, and that it had taken possession of said right of way for railroad purposes; furthermore, that by virtue of the said proceedings, the title which the law confers in such cases, had vested in the Cleveland & Mahoning Valley Railway Co.
In the light of these well-known facts and circumstances, the deed we are considering was made, containing the above recitals and obligations. With such broad, sweeping language, there ought to be no misunderstanding. The grantor expressly agreed that neither it “nor its successors or assigns, nor any other person claiming title through or under it, shall or will hereafter claim or demand any right or title to the premises herein conveyed, or any part thereof” * * *. That no doubt might be entertained about the intention of the parties, another clause of strong and fdecible words is added: “But they and every one of them shall by these presents be excluded and forever barred”
We agree with the circuit court that a conveyance containing such recitals and covenant is much more than an ordinary quitclaim or release. By the terms of the contract quoted in the deed the parties agreed upon amicable appropriation, and so denominate it, and the property to be so disposed of, is part of the same property which had been appropriated by the Cleveland & Mahoning Valley Railway Co. in the *231 year 1880, and it was by that amicable appropriation to pass to another railroad company for railroad purposes, and upon what had been found to be a fair and satisfactory sum as compensation. This being railroad property, it would seem to be reasonable that the grantor was asked and had agreed to insert in the conveyance which should follow the payment of the award made by the arbitrators, some bar ■against it, subsequently acquiring a title adverse to its grantee, who paid the award. The parties were ■competent to construct such a bar, and, from the ■character of the property and the contents of the entire instrument, have they not entirely succeeded? •
We find no such provisions as we have quoted considered in any case cited for the plaintiff in error. One of these, cases is White v. Brocaw, 14 Ohio St., 339. In that case there was a division of lands between heirs to an estate in which mutual deeds were executed, and the deed under consideration by the court was in the ordinary form of bargain, sale and release, and purported to convey to the grantees “all the estate, right and title, interest, claim and demand, hoth in law and equity” of the grantors “of, in and to the said premises and every part thereof.” But the •conveyance contained no recital of any particular interest owned or possessed by the grantors, or intended to be conveyed. The covenant read, that the grantors agre'e to “warrant and forever defend the said ■premises against all persons claiming, or, to claim by, from or under them, their heirs or assigns.”
This Court held in that case, that under the terms of the deed and in the light of its origin, the covenant was only coextensive with the grant, and bound only the vested interests of the grantors in the property at the time, and did not extend to an after-acquired title. *232 In Lessee of Boyd v. Longworth, 11 Ohio, 235, also, cited, no stronger case Avas made as to its facts, and Mr. Justice Burchard says on page 253: “An express Avarranty is the only contract which has the effect to estop the warrantor and those claiming under him, from maintaining title under a subsequent, purchase. The covenant must be one running with the land.”
The other Ohio case cited by plaintiff in error is. Hart v. Gregg, 32 Ohio St., 502. It is sufficient to say of that case that the deed there involved contained no covenant whatever, and is not of the slightest influence upon the present controversy.
The deed in the case now before us contained recitals of interest and estate which it was conveying;, the entire railroad property described therein, whether its extent was a conditional fee, or perpetual easement, and the covenant which it contained runs, with the estate conveyed, and it is expressly covenanted that the grantors, their successors and assigns, shall not claim or demand any right or title to. the premises conveyed or any part thereof, “but they and every one' of them shall by these presents be excluded and forever barred.” See Magruder v. Esmay, 35 Ohio St., 221; Van Rensselaer v. Kearney, 11 Howard (U. S.), 322.
We know of no reason Avhy the courts should not give the effect to this deed which the parties certainly intended. They appear to have had but one understanding of its meaning, and that is that the deed of September 6, 1885, from the Cleveland & Mahoning Valley Railway Co. to the grantor named in the former deed, inured to the benefit of the grantee therein named, The Pittsburgh, Cleveland & Toledo Railroad Co.
*233 For over seventeen years, these companies have acted on this construction, and acquiesced in the occupation and control of the latter company as the legitimate result of the covenant referred to.
But how does the case of Garlick stand if this view is not correct? The title would be in the New York, Pennsylvania & Ohio Railroad Co., because it obtained a conveyance from the Cleveland & Mahoning Valley Railway Co., who had gained title from the Parmlees through the appropriation proceedings of the year 1880, while Garlick, by a much later deed, claims to hold under Parmlees. Hence, neither aspect of the case gives any title to Garlick.
However, the plaintiff in error contends that the title derived from the proceedings to appropriate the right of way on the one hand, and the conveyance from the Parmlees of the right of way for railroad purposes on the other, created but an easement and not a fee, in the premises thus acquired, and that, as it appears in this case, that the railroad companies so acquiring title undertook by deeds to convey the' easement to other railroad companies, the attempt to convey worked an abandonment of the title or easement, and the premises forthwith reverted to the original owners, the Parmlees, or their grantee, Gar-lick.
This proposition is broadly laid down and advocated with great ability, and at least apparent confidence. To support this proposition we have been led through the statutes providing for appropriation of lands for railroad purposes under the old and present constitutions of Ohio, and cases have been cited giving construction of such provisions, and the point is made that a fee simple title is not obtained by the appropriating companies, but at most an easement *234 in-perpetuity, or as long as used for railroad purposes.
The circuit court concluded, as a matter of law, that by the completed proceeding in appropriation, “The Cleveland & Mahoning Valley Railway acquired a conditional fee in the lands, or at least such an interest therein as that the same could be and was conveyed to the N. Y., P. & O. R. R. Co. by its deed of September 6, 1885.” * *
We do not know that it is necessary or profitable for us to determine whether the estate so acquired is a fee conditional, or an easement, so long as used for the purposes of the grant or the appropriation. The right to enter into possession and to perpetually use, if desired, the premises for railroad purposes, is authorized by the law, and the only question is, may property thus obtained be conveyed to another company without working an abandonment.
As a case of first Impression we see no legal obstacle in the way of such conveyance. It Is but common knoAvledge that such properties are incumbered by mortgage to secure bonded indebtedness, and that foreclosure and judicial sale often occurs whereby a purchaser at the judicial sale enters into possession, and uses, occupies and controls the premises for railroad purposes as fully as if the title is one in fee simple.
In the case at bar we have one of the plaintiffs and one of the cross-petitioners holding under long termed leases, the premises granted to their lessors. We have also in this case the fact that the lessor and lessee companies, parties hereto, have, to the full knowledge of Garlick, been in possession and use of the premises in dispute before and when he obtained his quitclaim deed in January, 1899.
*235 The question of abandonment is eminently one of intention. Treating the title as a mere easement for railroad purposes, what is the law? On page 707 of Washburn's Easements and Servitude, it is said: “It is not easy to define in all cases what would be such act of abandonment as would destroy a right of easement, and each case seems to be a matter for a jury to determine. But nothing short of an intention to so -abandon the right would operate to that effect, unless other persons have been led by such acts to treat the servient estate as if free of the servitude, and the same could not be resumed without doing injury to their rights in respect to the same. And in this it is not intended to embrace questions which may arise from a mere nonuser of an easement.” The same principle is held in Hatch v. Railroad Co., 18 Ohio St., 121.
In Railroad Co. v. Ruggles, 7 Ohio St., 1, this Court laid down the rule that: “Where a landowner granted a right of way to a railroad company organized under a charter in perpetuity, and the grant contains no limit as to time, the easement will be perpetual unless terminated by release or abandonment. Where such railroad, with its appurtenances, is subsequently pledged to the state in security for a loan, and the pledge being forfeited, is sold by the state, the easement passes by the sale and is vested in the purchaser. This result is in no way affected by the fact that the purchase is made, mediately or immediately, by another railroad company, if there be legislative authority to make the purchase, and if the original object and consideration of the grant of the easement be not thereby changed or defeated.”
The entire case is very instructive, and its principles, in large measure, can be applied to the sub *236 ject before us, and they recognize the right of alienation of such property, either voluntarily, or through judicial proceedings. Also see Hatch v. Railroad Co., 18 Ohio St., 121.
The right of way is not all there is of a railroad. When it is procured, the construction thereon of the-roadbed, and the ties, bridges and rails, depots, sidings, etc., at great expense, are added, and form a part of the railroad property, and the union of these constitute a railroad, and is property that may be sold and conveyed. The attempts to make the conveyances challenged in this case did not of themselves work abandonment, and it is clear as the sunlight that the grantors had no intention that such a result should follow their acts. Instead of intending to-abandon the premises in the legal sense, the grantors, for a consideration sold and conveyed them to be used for the same purposes, which negatives the idea of abandonment. It is one of the findings of the lower-court that intention to abandon the property did not exist in this case.
It is urged Avith much force that this Court has decided otherwise in Platt v. Pennsylvania Co., 43 Ohio St., 228, and the case between same parties in Pennsylvania Co. v. Platt, 47 Ohio St., 366.
We have given those cases all due consideration,, and if we could go beyond the space allotted to this, opinion, they can be readily distinguished from the-case at bar. The facts in those cases are materially different, and the questions arose in a different manner, and hence we are not called upon to overrule them in order to decide this case. We are entirely clear, however, that the doctrine of those cases should not be extended beyond the particular facts upon which they stand.
*237 We now come to the questions which pertain to the issues made by the cross-petition of the Pittsburgh, Youngstown & Ashtabula Railroad Co. and the Pennsylvania Co., and the answer of Garlick thereto. The pleadings and the findings of facts show that on November 23, 1870, Margaret R. and W. S. Parmlee (the common source of title), conveyed to the Liberty & Vienna Railroad Co. the lands described therein, of which lands the premises in dispute are ■a part, and that “The Pittsburgh, Youngstown & Ashtabula Railroad Co. has duly succeeded to and is now possessed of all the rights, title and interest in and to ■said lands conveyed and vested by said deed to The Liberty & Vienna Railroad Co. of November 23, 1870.”
The following is a part of the description in the deed- from the Parmlees to The Liberty & Vienna Railroad Co., after giving the points of termini: '“Said strip of land to extend from said Spring Common on the south or southeast to the land of said 'Thorn on the northwest, and in width to extend southwesterly from said staked center line twenty-five feet ■or a less distance, if less than twenty-five feet shall be sufficient for the slopes of said railroad, and to extend northeasterly from said center line so far as may be needed for the track or tracks of said railroad, the length of said strip of land being about 525 feet.”
The lower court has found that the grantee in this •deed constructed the main track of its railroad on the lands so described, and that the main track has ever ¡since been and now is being used and operated in the same place and position over said strip and without ■change of grade; and further that when said main track was constructed, the same at the southeasterly -end next to Spring Common, it was constructed on *238 the berme bank of the old canal on a trestle thirteen feet in height above the bottom of said canal, which trestle gradually diminished in height tOAvard the northAvesterly line of the lands described in the petition, Avhere the main track Avas constructed on the natural surface of the ground. When the Pittsburgh, Cleveland & Toledo main track was built over its lands, the ground and bed of the old canal was filled up and graded to the level of the main track of the Liberty & Vienna Railroad, Avith the knoAvledge of the then occupiers and oAvners thereof. The surface of the ground and the bed of the canal were such that twenty-three feet from the center line of said main track was necessary to support the proper slope of the embankment of the southwesterly side of the main track. The height of the embankment and necessary width diminished gradually toward the northwesterly line of the strip, at which point the track was constructed without embankment, and that no embankment or slope was ever constructed on the southwesterly side of said track on any part of the strip described; but that said main track over the lands described in the deed of November 23, 1870, rested so far as needful upon said trestle until the main track of The P., C. & T. R. R. was constructed. This trestle was being gradually filled up by the Liberty & Vienna Railroad Co., while it owned and occupied the premises, and when the P. C. & T. constructed its track, the filling up of the trestle work Avas completed, the latter company occupying ten of the twenty-three feet so provided for the slope of the embankment and its support.
The full space of the twenty-three feet has been occupied and in use by these companies 'either in the process of construction or actual use after construe *239 tion, for many years, and we do not discern any substantial departure from the terms of the grant made by the Parmlees, which in substance was twenty-five feet in width from a certain line, if so much was necessary for the proper construction and support of the slope of an embankment for the railroad bed. Twenty-three feet were found to be necessary and have been used and occupied at one end of the strip, the height and extent of the slope gradually diminishing towards its northwesterly terminus. There, is nothing new in the extent of this occupation, and the ground occupied by the railroad companies is Avithin the boundaries fixed in the deed, all of which was open to the vieAV and knowledge of plaintiff in error Avhen he acquired his title.
What Ave have said on the question of abandonment we adopt in this branch of the case without repetition.
We discover no prejudicial error in the record, and adhere to the former judgment of affirmance of the judgment of the lower court.

Judgment affirmed.

Case No. 7214, Henry M. Garlick v. The Pittsburgh & Western Ry. Co. et al., and case No. 7215, Henry M. Garlick v. The Pittsburgh, Youngstown & Ashtabula R. R. Co., are a part of the same record, and are prosecutions in error to the same decree by parties in the original action, and are affirmed for the same reasons.
Burket, C. J., Davis, Shauck and Crew, JJ., concur.