CENTER RIDGE GANLEY, INC. ET AL., APPELLANTS, *v.* STINN ET AL., APPELLEES.

[Cite as Center Ridge Ganley, Inc. *v.* Stinn (1987),
31 Ohio St. 3d 310.]

(No. 86-1559—Decided July 29, 1987.)

312

*Reminger & Reminger Co., L.P.A.,* and *George S. Coakley,* for appellants.

*Morganstern & MacAdams Co., L.P.A.,* and *Stanley Morganstern,* for appellee Barbara J. Stinn.

*Thomas A. Kondzer* and *Francis A. Sciangula,* for appellees Edmund A. Stinn and Ed Stinn Chevrolet, Inc.

*Per Curiam.* The first issue before us is whether the introduction of parol evidence constituted reversible error.

The plaintiffs-appellants argue that the terms of the agreements in issue are clear and unambiguous, and therefore the trial court erred in admitting parol evidence. Appellants contend that a court cannot admit parol evidence to divine the intent of the contracting parties unless it first makes a finding that the contract(s) is (are) unclear or ambiguous. Since the trial court made no such preliminary finding, appellants submit that the trial court erred in "going outside the four corners of the contract in considering the parol testimony." Appellants further submit that an unexecuted "Contingency Agreement" was proposed by the parties which would have effectively made the real estate agreement contingent upon the consummation of the assets agreement. Since this contingency agreement was never executed, appellants contend that the parties' rejection of such contingency agreement had the same effect as if the parties had actually signed an agreement that stated that the real estate and assets agreements were independent of one another. In any event, appellants assert that the real estate agreement and the assets agreement were separate transactions, not dependent upon one another, since Thomas Ganley desired to obtain the real estate upon which the dealership was located, regardless of whether the assets agreement was consummated.

Defendants-appellees argue that the real estate agreement was contingent upon the completion of the assets agreement, and that if one agreement was unsuccessful, the entire transfer of the dealership would fail. Appellees contend that parol evidence is proper to supplement the agreements, so long as such parol evidence does not alter or vary the terms of the written agreement. While appellees maintain that the clear language of the agreements indicates one contingent transaction (*i.e.*, sale and transfer of the dealership), appellees point out that it was the appellants who first offered parol evidence before the trial court in order to show that the agreements were not contingent upon one another. Appellees submit that appellants did not object to the introduction of parol evidence at trial, and therefore cannot assign this as error on appeal. In addition, appellees argue that appellants' argument on this issue should be rejected, even if it was error to admit the parol evidence, since it was appellants who invited or induced the trial court to commit the alleged error.

Upon consideration of the arguments submitted by both parties, we find appellants' arguments to be unpersuasive for several reasons. While arguably appellants are correct that objection to the admission of parol testimony cannot be waived, see *Florence* v. *Tri-State Savings & Loan Co.* (App. 1974), 68 O.O. 2d 146, 322 N.E. 2d 322, we believe that more than a mere waiver of error is at issue in the cause *sub judice*. As pointed out by the appellate court below, appellants "invited" the alleged error by calling Edmund Stinn, as on cross-examination, and eliciting testimony from him as to the intent of the parties when entering the contract. Appellants cannot then complain when the appellees, in turn, entered similar but contradictory evidence of intent. Under the "invited error" doctrine, "[a] party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *Lester* v. *Leuck* (1943), 142 Ohio St. 91, 26 O.O. 280, 50 N.E. 2d 145, paragraph one of the syllabus. See, also, *State* v. *Woodruff* (1983), 10 Ohio App. 3d 326, 10 OBR 532, 462 N.E. 2d 457; 5 Ohio Jurisprudence 3d (1978) 97, Appellate Review, Section 543 *et seq.*

Notwithstanding the applicability of the "invited error" doctrine herein, the admission of parol testimony to explain certain ambiguous terms not inconsistent with or contradictory to the language of the contract was nevertheless proper in this cause. *Charles A. Burton, Inc.* v. *Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E. 2d 265. In our view, the real estate agreement was not altogether complete on its face, but rather its very terms indicated that it was part of a larger transaction involving the sale of an automobile dealership. The evidence submitted as to whether the real estate agreement was contingent upon the consummation of the assets agreement did not vary or alter the terms of the real estate agreement; it merely explained the operation of the contract as intended by the parties. In this vein, it is interesting to note that the appellants rely on parol evidence in order to strengthen their case before this

court. By pointing out the unexecuted "Contingency Agreement," appellants are asking this court to find the intention of the parties outside the four corners of the agreements in issue. In essence, appellants wish this court to ignore the parol evidence favorable to appellees, and to heed the parol evidence submitted by them. This court, however, uniformly declines to second-guess the proper weight that should be ascribed to evidence, since such a function should more properly be left to the trier-of-fact. See *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 10 OBR 408, 461 N.E. 2d 1273.

In any event, upon a review of the trial court's decision, it is not readily apparent that the trial court relied solely on the parol evidence in finding the agreements in issue to be interrelated. As a general rule of construction, a court may construe multiple documents together if they concern the same transaction. See *White* v. *Brocaw* (1863), 14 Ohio St. 339; and *Thayer* v. *Luce* (1871), 22 Ohio St. 62. We believe that a fair reading of the agreements in issue supports the trial court's finding that said agreements were contingent upon one another, and thus we refrain from disturbing that decision.

Therefore, we hold that the lower courts did not err in denying appellants the equitable remedy of specific performance, and that the decision of the court of appeals with respect to the admission of parol evidence should be affirmed.

The second issue presented is whether the denial of specific performance in this cause precludes, as a matter of *res judicata,* an action for money damages for breach of contract.

Appellants contend that notwithstanding the denial of specific performance by the trial court, their claims for money damages remain viable. The appellees, on the other hand, submit that while the denial of specific performance of a contract does not, as a matter of *res judicata,* preclude a subsequent claim for money damages, the trial court below found that appellants were the parties who breached the assets agreement, and that therefore the court could deny appellants' request for damages without further hearings.

Our research indicates very little precedent to guide this court in the determination of this issue. Long ago, this court held that "[a] judgment of dismissal of a petition for the specific performance of an agreement and of a counter-claim asking a rescission of the same, is no bar to an action for the recovery of money paid on the agreement * * *." *Porter* v. *Wagner* (1881), 36 Ohio St. 471, paragraph one of the syllabus.

While some jurisdictions have held that under circumstances similar to the cause *sub judice,* a claim for specific performance and a claim for damages constitute the same cause of action, other courts have found that the two claims constitute different causes of action whereby a decree allowing or denying specific performance does not preclude, as a matter of *res judicata,* a subsequent action for damages for breach of contract. See Annotation (1971), 38 A.L.R. 3d 323.

We believe that under the facts of the instant cause, the better view is that which recognizes a claim for specific performance and a claim for money damages arising out of the same factual context as representing different causes of action. Therefore, we agree with appellants that a finding that a party is not entitled to the equitable relief of specific performance is merely a denial of one special form of damages. In our opinion, such a denial of specific performance should not necessarily preclude, by way of *res judicata*, an action for money damages. Thus, we are persuaded by Judge Markus' rationale in his dissenting opinion below where he stated, "* * * I would reverse the judgment which denies the buyer any relief for the sellers' calculated breach of the agreements. The trial court had discretion to deny equitable relief because the buyer had not completed its performance after the sellers' anticipatory breach."

In addition, in reversing the trial court on this issue, we are mindful of the fact that the evidence and testimony proffered below related solely to the equitable request of specific performance. Upon remand, the trial court should determine any damages which the appellees caused the appellants by failing to satisfy their contractual obligations.

Based on all the foregoing, we affirm the court of appeals' judgment with respect to the denial of specific performance and the admission of parol evidence. However, with respect to the issue of money damages, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings in accordance with this opinion.

*Judgment affirmed in part,*
*reversed in part and*
*cause remanded.*

SWEENEY, LOCHER, HOLMES and H. BROWN, JJ., concur.

MOYER, C.J., DOUGLAS and WRIGHT, JJ., concur in part and dissent in part.

DOUGLAS, J., concurring in part and dissenting in part. As set forth in the majority opinion, the facts of this case are simple. The parties contracted to buy and sell an automobile dealership known as Ed Stinn Chevrolet, Inc. To accomplish their purpose, the parties entered into two separate written agreements. The first, introduced into evidence as plaintiffs' Exhibit 1, was entitled "AGREEMENT FOR PURCHASE AND SALE OF ASSETS." The other agreement, plaintiffs' Exhibit 20, was denominated "PURCHASE AGREEMENT FOR REAL ESTATE." Appellants were the "buyer" or "purchaser" in both agreements. Ed Stinn Chevrolet, Inc. was the "seller" in the assets agreement and Barbara J. Stinn was the "seller" in the real estate agreement. The assets agreement was executed on February 25, 1985. The real estate agreement was not executed until March 4, 1985. It is these two agreements that this court

now finds are so inextricably tied that the terms of the real estate agreement are not enforceable absent completion of the assets agreement. Because an actual review of the terms of the real estate agreement unequivocally contradicts the position of the majority, I respectfully dissent.

The real estate agreement contains sixteen clauses. Several of the clauses contain subparts. Many of these clauses and subparts recite the familiar language of any agreement for the sale and purchase of real property. These include provisions for the purchase price, escrows, zoning, liens, title work, utilities, insurance, warranties, etc. In addition to these recitals, there are specific provisions in the agreement that are clear, unequivocal and unambiguous which are and must be ignored for the majority to reach today's decision. Since no magic wand has been waved and the provisions made to disappear, it is my judgment that they must be dealt with and in so doing, it must be concluded that the appellants are clearly entitled to their requested relief of specific performance.

Clause one states that the buyer agrees to buy and the seller agrees to sell the specific property involved for an agreed-upon price.

Clause five states:

*"Date and Place of Events.*

"(A) The Closing Date hereinunder *shall* take place sixty (60) days from the date of execution hereof, *or* upon the closing date under a certain Agreement For Purchase and Sale of Assets dated February 25, 1985 between TOMLO, INC., ED STINN CHEVROLET, INC. and EDMUND A. STINN *if such closing date occurs prior to the expiration of such sixty (60) day period."* (Emphasis added.)

Thus, the only contingency placed on the transaction is the timing of the closing. The term "shall" is used making the closing mandatory. The term "or" is used to require an earlier closing date should the closing of the asset agreement occur before the expiration of the sixty-day period provided for in the real estate agreement.

Clause eight, in pertinent part, provides:

*"Closing.*

"(A) Within five (5) days after the execution hereof by Buyer and Seller, an executed copy of this Agreement shall be delivered to the Title Company to enable it to commence title work with respect to this transaction.

"* * *

"(C) All funds and documents to be deposited in Escrow shall be so deposited *within sufficient time for a timely closing* of this transaction." (Emphasis added.)

Clause eleven provides that:

*"Possession.*

"Seller agrees to deliver possession of the Premises to Buyer on the Closing Date * * *."

Clause fifteen states:

"*Further Documents*.

"The *parties agree* that prior to and after the Closing Date, *they will execute and deliver* such further instruments as may reasonably be requested by the other party in order to complete or evidence the transaction contemplated in this Agreement." (Emphasis added.)

Finally, clause sixteen (B) states:

"Failure by any party hereto to exercise any right or remedy under this Agreement or delay in exercising the same will not operate as a waiver, and no waiver will be effective unless it is in writing and signed by the waiving party; * * *"

There is some dispute over whether the buyers had the wherewithal at the designated closing time to complete the transaction and, I am aware, that a deed given by the "seller" in this case might, without the signature of the "seller's" husband, convey a clouded title, but that is no affair of the seller or this court. The buyers indicated they were ready to close, made a proper deposit and appeared at the closing site only to find that the seller would not appear. In fact, the record reflects that the seller, Barbara J. Stinn, had previously signed a deed conveying her interest in the property pursuant to the contract but her husband, Edmund, had destroyed the deed.

There is no indication anywhere within the four corners of this clearly drafted contract that the completion of this real estate transaction was contingent upon any other agreement or conditions — including the assets agreement. The appellants-buyers say they want the property and are willing to pay the agreed-upon purchase price. Upon the refusal of seller to convey her title interest pursuant to her agreement to do so, appellants seek specific performance. Appellants are entitled to the relief they seek. To refuse to grant specific performance in this case makes one wonder when the remedy of specific performance will ever be available to an aggrieved party to a real estate sale and purchase.

There is one saving feature in the majority opinion. At least the majority remands the case to the trial court for a determination of damages suffered by appellants-buyers because of the breach by the seller. This affords appellants some relief but it is a mystery to me how this court can find that appellants may be entitled to damages for the seller's breach — but fail to find that the same breach does not entitle appellants to specific performance.

Accordingly, I would enter judgment for appellants on their claim for specific performance and, hence, I dissent from the majority's opinion which denies such relief. Since the majority does give some relief to appellants by way of remand, I concur in that part of the judgment.

MOYER, C.J., and WRIGHT, J., concur in the foregoing opinion.