**State v. Phipps**
*[Cite as 5 AOA 386]*

*Case No. CA89-07-067*

*Clermont County, (12th)*
*Decided August 6, 1990*

*Donald W. White, Clermont County Prosecutor, Timothy E. Schneider, 123 North Third Street, Batavia, Ohio 45103, for Plaintiff-Appellee.*

*Stephen D. Johnson, 114 Main Street, Milford, Ohio 45150, for Defendant-Appellant.*

YOUNG, J.

On January 21, 1989, Officers Jim Ray McClanahan and Gary L. Davis of the Union Township Police Department responded to a radio dispatch indicating that there had been a shooting at Vic's Brew and Cue Lounge, located at the intersection of Mt. Carmel-Tobasco Road and Cincinnati-Batavia Pike in Clermont County, and that an orange Ford van directly involved in the shooting had left the scene traveling southbound on Mt. Carmel-Tobasco Road. McClanahan and Davis intercepted the van near Clough Pike and approached the vehicle with their weapons drawn. They ordered the occupants, defendant-appellant Gregory A. Phipps, Michael Shearman and John Bennett, to get out of the van and lie face down on the ground. Davis then leaned over the driver's seat to see if there were any other occupants in the rear of the van. In doing so, he observed a nine milli-meter semi-automatic handgun on the floor between the driver and passenger seats. Appellant, Shearman and Bennett were then

placed under arrest and taken into custody. A subsequent inventory search revealed another semi-automatic handgun in the rear of the van beneath some jackets.

On January 30, 1989, appellant was indicted for carrying a concealed weapon in violation of R.C. 2923.12 and improperly handling firearms in a motor vehicle in viola-tion of R.C. 2923.16. Appellant's motion to suppress was overruled on June 26, 1989 and appellant was convicted following a jury trial on July 14, 1989. The trial court imposed concurrent sentences of two years imprison-ment on the concealed weapon charge and six months on the handling firearms charge. Appellant thereafter perfected the instant appeal and set forth two assignments of error.

*Assignment of Error No. 1*

"The Trial Court erred in overruling Defendant's Motion To Suppress."

*Assignment of Error No. 2*

"The Trial Court erred in permitting the prosecution to elicit, over objection, a state-ment from a police officer regarding Defendant's post-arrest silence."

In his first assignment of error, appellant asserts that the trial court erred in overruling his motion to suppress. Appellant's primary argument is that the radio dispatch did not provide specific and articulable facts to give McClanahan and Davis a reasonable suspicion of criminal activity justifying the stop of appellant's van.

In *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, the United States Supreme Court held:

"[I]f a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, *** to pose questions to the person, or to detain the person briefly while attempting to obtain further information. ***" (Citations omitted.) *Id.* at 232, 105 S.Ct. at 682.

According to the Court, the initial inquiry in such a situation must be whether the issuer of the bulletin had the requisite knowledge to establish the justification for the detention. *Id.*; see also, *State v. Holmes* (1985), 28 Ohio App. 3d 12, 16. If the party issuing the bulle-tin had specific and articulable facts support-ing a reasonable suspicion of criminal activity, then a police officer's objective reliance upon

that bulletin is sufficient to justify an investigative stop. *Hensley, supra,* at 232-233, 105 S.Ct. at 682.

In the case at bar, the record shows that Officer Jeff Jenkins responded to Vic's Brew and Cue in an unmarked cruiser, after a citizen informed him that there was a disturbance and that shots had been fired. Jenkins indicated that as he approached the bar he saw a lot of commotion, people running ***." He then observed an orange Ford van leave the parking lot and travel south on Mt. Carmel-Tobasco Road. As Jenkins was stuck in traffic, he radioed this information to the dispatcher, who then issued the bulletin heard by McClanahan and Davis. Under these circumstances, it would have been entirely reasonable for Jenkins to briefly detain the occupants of the van while attempting to obtain further information about the alleged shooting. See *Adams v. Williams* (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 1923. In such an instance, the strong governmental interest in solving crimes and bringing offenders to justice certainly outweighs the individual's interest in being free from a brief investigative detention, particularly where, as here, the crime being investigated involves a threat to public safety. *Hensley, supra,* at 229, 105 S.Ct. at 680. Accordingly, we find no constitutional infirmity in McClanahan's and Davis' reliance upon the dispatch to stop appellant's van.

Appellant also argues that the actions of McClanahan and Davis in approaching the van with their service weapons drawn and ordering the occupants to lie face down on the ground elevated the encounter from a stop to an arrest, thereby requiring probable cause. We disagree. Having stopped the van, the officers were authorized to take such steps as reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop. *Hensley, supra,* at 233, 105 S.Ct. at 683; *Terry v. Ohio* (1968), 392 U.S. 1, 23-24, 88 S.Ct. 1868, 1881. Here, the suspects were reportedly involved in a shooting and thus presumably armed and dangerous. Under such circumstances, the officers' use of a weapon was reasonable and did not transform the investigatory stop into an arrest. *United States v. Ocampo* (C.A. 7, 1989), 890 F.2d 1363, 1369; *State v. McFarland* (1982), 4 Ohio App. 3d 158, 160.

Appellant additionally challenges the constitutional validity of the seizure of the weapon from between the front seats. Appellant argues that Davis' conduct in leaning over the driver's seat to check for additional occupants in the back of the van constituted an unlawful search, thereby tainting the seizure of the weapon. We disagree.

In *Michigan v. Long* (1983), 463 U.S. 1032, 103 S.Ct. 3469, the Supreme Court held that a police officer may conduct a limited search of the passenger compartment of an automobile during the course of a *Terry* stop if the officer possesses a reasonable belief that the suspect is dangerous and that the suspect may gain immediate control of weapons. *Id.* at 1049-1050, 103 S.Ct. at 3481. Such a search, which must be limited to those areas in which a weapon may be placed or hidden, is permissible even where the suspect is outside of the automobile and effectively "in the control" of the officers. *Id.* at 1051-1052, 103 S.Ct. at 3482. As the Court noted, if the suspect is not placed under arrest and is permitted to reenter his automobile, he could then have access to any weapons inside. Therefore, a limited search for weapons is reasonable to ensure the safety of the officers. *Id.* at 1052, 103 S.Ct. at 3482.

The instant case falls directly within the parameters of *Long, supra.* The officers had specific and articulable facts before them to reasonably warrant a belief that the occupants of the van were armed and dangerous. Thus, we cannot say that Davis acted unreasonably in taking the Preventive measures that he did. His "search" was extremely limited and fully justified under the circumstances. Appellant's first assignment of error is overruled.

In his second assignment of error, appellant relies upon *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct. 1229, and asserts that the trial court erred in allowing the prosecutor to elicit a statement from McClanahan on redirect examination concerning appellant's post-arrest silence. This argument is without merit.

In *Griffin, supra,* the United States Supreme Court held that -comments by the prosecutor regarding the defendant's refusal to testify violated the accused's Fifth Amendment right to remain silent. *Id.* at 615, 85 S.Ct. at 1233. However, in *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, and more recently in *United States v. Hasting* (1983), 461 U.S. 299, 103 S.Ct. 1974, the Court rejected the argument that a *Griffin* error was

*per se* error requiring an automatic reversal. *Hasting, supra,* at 508, 103 S.Ct. at 1980. Instead, the Court ruled that a reversal was required only if there was a reasonable possibility that the evidence complained of might have contributed to the conviction. *Chapman, supra,* at 23, 87 S.Ct. at 827. According to the Court, the question to be asked by a reviewing court is whether absent the prosecutor's comment on the defendant's silence, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty. *Hasting, supra,* at 510-511, 103 S.Ct. at 1981; see also, *State v. Zimmerman* (1985), 18 Ohio St. 3d 43, syllabus.

Upon reviewing the record *sub judice,* we are convinced that any error emanating from the prosecutor's reference to appellant's silence was harmless beyond a reasonable doubt, especially when that reference is considered in context with defense counsel's cross-examination of McClanahan.

During the cross-examination of McClanahan, defense counsel elicited the following testimony:
"***

"Q. And is there any doubt in your mind that Mr. Phipps was in fact the driver of that vehicle?

"A. There is no doubt.

"Q. You indicated that there were other occupants in the van and you indicated where they were. Did you personally observe Mr. Phipps conceal anything?

"A. No, I did not.

"Q. Did you personally observe Mr. Phipps touch any kind of a weapon?

"A. No, I did not.

"Q. Did you personally see any type of firearm in Mr. Phipps' position [sic]?

"A. None other than what was brought out.
"***

"Q. Did you personally observe Mr. Phipps in possession of a firearm?

"A. No, I did not.

"Q. Isn't it in fact true that you never saw any efforts by Mr. Phipps to conceal a weapon?

"A. Nothing physically, no.
"***

"Q. Did Mr. Phipps make any statements to you?

"A. None that I can recall.

"Q. Okay, did he make statements to any other officer?

"MR. BREYER: Objection, Judge.

"THE COURT: To his knowledge, in his presence.

"A. I can't testify to that fact, no.

"Q. To your personal knowledge you don't know that he did?

"A. No, I don't.
"***"

On re-direct examination, the prosecutor asked the following questions which form the basis of appellant's argument:

"Q. So, Mr. Phipps never told you that it wasn't his, any gun was not his, did he?

"MR. JOHNSON: Objection, Your Honor.

"THE COURT: You opened it. Overruled.

"Q. In other words, he never denied ownership or possession of weapons?

"A. No, he didn't."

Upon considering all of the foregoing testimony, we cannot say that appellant was prejudiced by the two questions asked by the prosecutor on re-direct. The record contains ample evidence of appellant's guilt and it is clear that the jury would have returned a verdict of guilty even had the two questions in issue not been asked. Accordingly, any error was harmless beyond a reasonable doubt.

Notwithstanding the harmless nature of the prosecutor's questions, we further conclude that the trial court properly ruled that appellant "opened the door" for the alleged error by introducing evidence of appellant's silence during the cross-examination of McClanahan. By asking McClanahan whether appellant made any statements to him or Davis, defense counsel put appellant's silence in issue and invited a response by the prosecutor. Therefore, under the "invited error" doctrine, appellant is precluded from taking advantage of the alleged error which he himself invited or induced in the trial court. *Center Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St. 3d 310, 313; *State v. Woodruff* (1983), 10 Ohio App. 3d 326, 327. Appellant's second assignment of error is overruled.

*Judgment affirmed.*

HENDRICKSON, J., concurs.

JONES, P.J., concurs in part and dissents in part.

JONES, P.J., concurring in part and dissenting in part.

I concur in the majority's disposition of appellant's first assignment of error. I must, however, dissent with respect to the second assignment of error as I find the error claimed therein to be neither harmless nor invited by appellant.

Defense counsel's cross-examination of Officer McClanahan elicited testimony that appellant neither touched, possessed, nor controlled either of the weapons removed from appellant's van. It would appear that the questions concerning the lack of any statements by appellant were designed to dispel any doubts in the minds of the triers of fact as to whether appellant engaged in any conduct or made any statements which were inculpatory. After said questions were answered in the negative, the state proceeded to ask whether appellant made any statements of an exculpatory nature. I believe such was a violation of appellant's Fifth Amendment rights and constitutes reversible error.

I do not agree that counsel's cross-examination of McClanahan "opened the door" and invited any error which followed. In *State v. Woodruff* (1983), 10 Ohio App. 3d 326, the invited error related to evidence which the accused *himself* introduced and is distinguishable from the case at bar where the contested evidence was offered by the state. *Center Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St. 3d 310, is a civil case and simply does not involve the infringement of a constitutionally guaranteed protection in criminal proceedings.

Even if the record contains other sufficient evidence to support a finding of guilt, such does not give the state free reign to comment on "uncontroverted" evidence in closing arguments and essentially assert that appellant is guilty because he failed to profess his innocence. The state is not permitted to use an accused's post-arrest silence against him absent proof the accused first voluntarily offers information to police and thereafter terminates his statement, refusing to speak any further with the authorities. *State v. Gillard* (1988), 40 Ohio St. 3d 226, 231, 232, certiorari denied (1989), __ U.S. __, 109 S.Ct. 3263.

While defense counsel might have opened a "crack" in the door during cross-examination, such did not give the prosecution the right to break down the door and rush in with the SWAT team by repeatedly emphasizing the point in final argument.

I would sustain the second assignment and remand the matter for a new trial. Accordingly, I respectfully dissent.