OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

TRINOVA Corporation, Appellee, v. Pilkington Brothers, P.L.C., et al.; Libbey-Owens-Ford Company, Inc. et al., Appellants.
[Cite as TRINOVA Corp. v. Pilkington Bros., P.L.C. (1994), Ohio St.3d     .]
Contracts -- Doctrine of contract integration explained --
     Contract integration is meant to supply missing meaning in
     order to effectuate the full intent of the parties, not to
     allow distinct contracts to be used to contradict
     unambiguous language.
Contract integration provides that where the parties' intent is
          sought to be ascertained from several writings, a
          prior writing will be rejected in favor of a
          subsequent one if the latter writing contains the
          whole of the parties' agreement. If the subsequent
          agreement is complete and unambiguous on its face,
          parol evidence is inadmissible to show a contrary
          intent of the parties.
     (No. 92-2240 -- Submitted January 5, 1994 -- Decided September 14, 1994.)
     Appeal from the Court of Appeals for Lucas County, No. L-90-096.
     This appeal arises from a dispute between the parties over the payment of tax liabilities incurred by plaintiff-appellee, TRINOVA Corporation, for the 1985 calendar year.
     Prior to April 28, 1986, TRINOVA Corporation was called Libbey-Owens-Ford Company. One division of Libbey-Owens-Ford Company was LOF Glass, Inc. ("LOF"). Ultimately, LOF was sold to intervenor-appellant, Pilkington Holdings, Inc. Pilkington Holdings is a wholly owned subsidiary of defendant, Pilkington Brothers, P.L.C., and acts as Pilkington Brothers' financial holding company for its North American operations. The name Libbey-Owens-Ford Company was sold to Pilkington Holdings and the former Libbey-Owens-Ford Company changed its name to TRINOVA Corporation. The distinction between Pilkington Brothers, P.L.C. and Pilkington Holdings, Inc. has been blurred throughout the course of this litigation and is of little relevance to the matter before us, except for the fact that only Pilkington Holdings is an appellant here. Therefore, both

companies will be referred to as Pilkington except where the distinction becomes relevant. Generally, the parties will be referred to by their current names.

The genesis of this case was in 1982 when TRINOVA became a potential takeover target of Gulf & Western Corporation. During 1982, Gulf & Western accumulated thirty percent of TRINOVA's outstanding stock and expressed an interest in altering the nature of its investment. Don McKone, Chief Executive Officer of Libbey-Owens-Ford Company, now TRINOVA, fearing that a takeover by Gulf & Western would be detrimental to TRINOVA's continued viability, arranged a meeting between Gulf & Western and Pilkington Brothers, P.L.C. Pilkington was and is a multinational glass manufacturer and had worked with TRINOVA's glass division in the past through technical assistance agreements. McKone felt more confident with Pilkington's ownership and hoped a sale might be negotiated. As a result of the meeting, a sale in fact did take place. Gulf & Western sold its entire holding to Pilkington. After the sale, Pilkington took an active part in the affairs of TRINOVA, placing two of its officers on the board of directors.

The first relevant action taken by the board occurred in July 1985 when it voted to spin off TRINOVA's glass division into a separate corporate subsidiary. To accomplish this restructure, a Transfer and Assumption Agreement ("TAA") was drafted. This document allocated assets and liabilities between the two entities, LOF Glass, Inc., the subsidiary, and Libbey-Owens-Ford Company, now TRINOVA. The TAA was signed by officers of both corporations on March 6, 1986, with an effective date of February 19, 1986, the day LOF Glass, Inc. was incorporated.

Of particular relevance to this action are the assumption of liabilities provisions contained in Sections 3 and 4 of the TAA, which read in part:

TAA 3.1:

"In consideration of the transfer of the LOF Glass Assets and issuance of stock as contemplated by Section 1 hereof, LOF Glass will, as of the Effective Date, assume and agree to pay, perform or discharge all of the following obligations and liabilities of [TRINOVA], however and whenever arising (the 'LOF Glass Liabilities'):

"(a) all obligations and liabilities of [TRINOVA] Of or Associated With the LOF Glass Business as of the Effective Date, whether known or unknown, and whether accrued, contingent, threatened or otherwise, including, without limitation, *** tax liabilities ***."

TAA 4.1:

"LOF Glass agrees to indemnify and hold [TRINOVA] harmless against and from any and all loss or damage, including attorney's fees and other costs and expenses, resulting from any obligation or liability founded upon or arising out of any of the following:

"(a) obligations or liabilities assumed by LOF Glass pursuant to Section 3."

Subsequent to the board's vote, but prior to the execution of the TAA, a decision was made to sell the newly formed subsidiary to Pilkington. Negotiating teams were established by both companies. Extensive documentation was supplied by

TRINOVA to Pilkington, much of which centered on TRINOVA's past practice of accelerating pension deductions for tax purposes. Richard Scholefield, a mergers and acquisition financial specialist for Pilkington, testified that there was so much pension information supplied that it was difficult to sift through it all. Included in this information were past IRS form 5500s showing TRINOVA's pension deduction practices. Apparently, it had been TRINOVA's policy to deduct pension contributions made up to the time a return was due as an expense in the previous year. In this case, TRINOVA's 1985 consolidated return was due on September 15, 1986. Therefore, contributions made up to that date were deducted as 1985 expenses. This practice ultimately formed the basis for this litigation.

Negotiations culminated in the execution of a Share Exchange Agreement ("SEA"). Under the terms of the SEA, Pilkington exchanged its thirty percent interest in TRINOVA, plus other consideration, for sole ownership of LOF Glass, Inc. The SEA was signed by TRINOVA and Pilkington on March 7, 1986. The transaction was formally closed on April 28, 1986, after amendments were made to both the TAA and SEA.

Following the sale, TRINOVA prepared its 1985 consolidated tax return which was due September 15, 1986. Consistent with past practice, TRINOVA accelerated its pension payments thereby deducting anticipated payments to be made in 1986 up to the date the return was filed. However, contrary to TRINOVA's presumption, LOF ceased making pension payments after the sale and TRINOVA was ultimately assessed substantial additional taxes. Thereafter, TRINOVA made a demand on LOF for reimbursement, which LOF refused and this litigation ensued.

At trial, TRINOVA's claims against LOF were predicated on LOF's assumption of liabilities "whether known or unknown" as set forth in Sections 3 and 4 of the TAA. LOF and Pilkington contended that pursuant to Section 4.04(a) of the SEA, the 1985 taxes for which LOF would be liable were settled and paid at closing in the amount of $1,904,000. Pilkington contended that this figure was a component of the intercompany account and that pursuant to Sections 5.09(c) and 4.04(a)1 of the SEA, TRINOVA warranted that LOF had no liability beyond that expressed in the intercompany account. Furthermore, Pilkington contended that TRINOVA breached its books and records warranty contained in Section 5.13 of the SEA, in that it failed to disclose a contingent future tax liability in the event the 1986 pension contributions were not made.

The trial court directed a verdict for TRINOVA on Pilkington's books and records warranty counterclaim. The trial court further held that as a matter of law, LOF and Pilkington had no payment defense because the defense was based upon provisions of the SEA, and no term of the SEA could be used by LOF as a defense to TRINOVA's claim based upon the TAA. As a result, the trial court did not permit admission of the Closing Book offered by Pilkington. The Closing Book was a compilation of all the documents used at the LOF Glass, Inc. sale closing. The trial court found that while the two documents could be read together to determine overall intent, they were separate documents executed by separate parties. The remaining questions were submitted to the jury, which returned

a verdict of $6,038,772 in favor of TRINOVA.  The court of appeals affirmed the trial court in all respects.

This matter is now before this court upon an allowance of a motion to certify the record.

Porter, Wright, Morris & Arthur and Richard M. Markus; Cooper, Straub, Walinski & Cramer, Richard S. Walinski and Joseph P. Thacker; Pope & John, Ltd. and Peter C. John, for appellee.

Vorys, Sater, Seymour & Pease, Duke W. Thomas and Sandra J. Anderson; Fuller & Henry, Thomas S. Zaremba and Sue A. Sikkema, for appellants.

Moyer, C.J.    The primary issue presented is whether LOF may raise as a defense to an action by TRINOVA a term contained in the SEA to which LOF was not a party.

Pilkington first contends that the SEA and the TAA are "integrated parts of the entire agreement" and, therefore, terms contained in the SEA are available to LOF as defenses. We believe that Pilkington's argument is fatally flawed because of its fundamental misinterpretation of the principle of contract integration.  Contract integration is actually a corollary to the parol evidence rule.  Contract integration provides that where the parties' intent is sought to be ascertained from several writings, a prior writing will be rejected in favor of a subsequent one if the latter writing contains the whole of the parties' agreement.  If the subsequent agreement is complete and unambiguous on its face, parol evidence is inadmissible to show a contrary intent of the parties.  3 Corbin on Contracts (1960) 357, Section 573; Burton v. Durkee (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265.  If there is a total integration of the writings, as Pilkington contends is expressed in Section 15.06 of the SEA, then the SEA would become the total and singular expression of the agreement and the TAA would lose its vitality for all purposes.  The TAA would cease to exist and the only expression of intent between the parties would be contained in the SEA. There would no longer be any contract between TRINOVA and LOF.

Pilkington's position is further undermined by the fact that LOF was not a party to the SEA.  It is generally recognized that a contract is binding only upon the parties to that contract.  Cleveland Window Glass & Door Co. v. Natl. Surety Co. (1928), 118 Ohio St. 414, 161 N.E. 280.  If these contracts are truly integrated, then LOF retains no connection to the transaction.  This is not the meaning Pilkington attaches to the documents at issue and cannot be supported as the intent of the parties.

A more realistic interpretation of Pilkington's argument is that the SEA is only a partially integrated contract and, to the extent that the TAA and SEA conflict, the SEA indemnification provision applies.  However, this interpretation is inconsistent with the all-encompassing, boilerplate language of the SEA merger clause, which provides:

"Section 15.06.  Entire Agreement; Amendment.  This Agreement, the exhibits and schedules hereto and the related agreements specifically referred to herein embody the entire agreement of the parties hereto with respect to the subject

matter hereof and supersede all prior agreements with respect thereto.  This Agreement may be amended, and any provision hereof waived, but only in writing signed by the party against whom such amendment or waiver is sought to be enforced."

The related agreements to which Section 15.06 refers are contained in yet a third document, the Closing Book, to which LOF is not a party.  Pilkington contends that the Closing Book refers to the TAA as an "ancillary document" and the SEA as the "basic document."  From this Pilkington reasons that the TAA is somehow subservient to the SEA.  This argument still avoids the fact that LOF is not a party.  Integration is a rule of substantive law to be decided by the trial judge in the first instance.  See 4 Williston on Contracts 3d (1961) 955, Section 633.  The question of partial integration must be determined from the four corners of the document itself and not by a prefatory table of documents as Pilkington suggests.  See 2 Restatement of the Law 2d, Contracts (1981) 117-118, Section 210(3).  Furthermore, in the case of a partial integration, only consistent additional terms may be added, not inconsistent terms.

The TAA and SEA are integrated contracts independent of each other.  However, each involves separate subject matters, with separate purposes and different parties.  The doctrine of integration is meant to supply missing meaning in order to effectuate the full intent of the parties.  It is not meant to allow distinct contracts to be used to contradict unambiguous language.  Quite simply, this is not a case of contract integration as Pilkington maintains, but is rather a case of contract and the intent of the parties thereto.

The overriding concern of any court when construing a contract is to ascertain and effectuate the intention of the parties.  Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 544 N.E.2d 920; Skivolocki v. E. Ohio Gas Co. (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374.  Generally, "evidence can not be introduced to show an agreement between the parties materially different from that expressed by clear and unambiguous language of the instrument."  Blosser v. Enderlin (1925), 113 Ohio St. 121, 148 N.E. 393, paragraph two of the syllabus; Latina v. Woodpath Dev. Co. (1991), 57 Ohio St.3d 212, 567 N.E.2d 262.  This is not to suggest that two related documents may not both be read in order to establish the intention of the parties.  However, this must be accomplished within the context of establishing intent and not for the purpose of negating clear and unambiguous language.

The agreement upon which suit was brought was the TAA. The parties to that agreement are TRINOVA and LOF.  In clear and unambiguous terms, it provides that LOF will assume "all obligations and liabilities of [TRINOVA] *** whether known or unknown, absolute or contingent ***."  The liability at issue is a current deduction for future pension contributions.  There is ample evidence in the record to support the factual conclusion that the parties knew TRINOVA had calculated its taxes to reflect future pension contributions for a long period of time.  Whether this liability is classified as absolute or contingent, it was a known future liability of which all parties must be deemed aware.  Therefore, it falls within the

liabilities assumed by LOF.  Absent ambiguity, there is no necessity for interpretation.  Allen v. Std. Oil Co. (1982), 2 Ohio St.3d 122, 2 OBR 671, 443 N.E.2d 497.

To say that the TAA and SEA are not related documents would be denying the obvious.  Yet, a subsequent contract does not supersede or modify unambiguous terms in a preceding contract unless the subsequent agreement specifically evidences an intent to do so.  For this reason, we find Edward A. Kemmler Mem. Found. v. 691/733 E. Dublin-Granville Rd. Co. (1992), 62 Ohio St.3d 494, 584 N.E.2d 695, and Ctr. Ridge Ganley, Inc. v. Stinn (1987), 31 Ohio St.3d 310, 31 OBR 587, 511 N.E.2d 106, inapplicable.  The TAA is complete in its assumption of liabilities and, therefore, there is no need to refer to a second document executed by different parties to supply missing terms.

We are likewise unpersuaded by Pilkington's argument that it was a third-party beneficiary to the contract executed by TRINOVA and LOF.  In Hill v. Sonitrol of Southwestern Ohio, Inc. (1988), 36 Ohio St.3d 36, 40, 521 N.E.2d 780, 784, we adopted Section 302 of the Restatement of the Law 2d, Contracts (1981) 439-440, which provides:

"'(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

"'***

"'(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'"

Under this theory, only an intended beneficiary may exert rights to a contract of which he is not a party.  The so-called "intent to benefit" test provides that there must be evidence, on the part of the promisee, that he intended to directly benefit a third party, and not simply that some incidental benefit was conferred on an unrelated party by the promisee's actions under the contract.  There must be evidence that the promisee assumed a duty to the third party.  Norfolk & W. Ry. Co. v. United States (C.A.6, 1980), 641 F.2d 1201.  We find no abuse of discretion in the trial court's determination of intent here.

Finally, we address Pilkington's argument that TRINOVA breached its duty under Section 5.13 of the SEA to adequately reflect all material transactions in the "[b]ooks and [r]ecords of the LOF Glass Business ***."  Both the domestic tax manager for TRINOVA and TRINOVA's assistant comptroller testified that the pension deduction assumption was reflected in the intercompany accounts statement supplied to Pilkington.  Pilkington's own mergers and acquisition financial specialist, an officer of Pilkington, testified to how this practice was reflected in the balance sheet.  There was also extensive testimony on the voluminous amount of pension material supplied to Pilkington, including IRS form 5500s, which detailed past pension deductions prior to the execution of the SEA.  It was a reasonable inference by the trier of fact that Pilkington was well aware of TRINOVA's past pension practices and that the material supplied to Pilkington more than adequately complied

with TRINOVA's duty under the books and records warranty.

It is consistent with the record before us to conclude that Pilkington was aware of TRINOVA's pension assumptions concerning future tax liability and that Pilkington made a conscious business decision to cease making contributions to the fund, thereby causing TRINOVA to incur substantial unexpected liability.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

                                        Judgment affirmed.

Douglas, F.E. Sweeney and Pfeifer, JJ., concur.

A.W. Sweeney, Wright and Grady, JJ., dissent.

Thomas J. Grady, J., of the Second Appellate District, sitting for Resnick, J.


FOOTNOTE:

1 Section 5.09:

"*** (c) [TRINOVA] and its Affiliates have timely paid or made provision for all Taxes relating to the LOF Glass Business or LOF Glass and its Subsidiaries ***."

Section 4.04(a):

"(a) It is agreed that, in accordance with the provisions of this Section 4.04, (i) the LOF Glass Business shall be operated for the account of LOF Glass from and after January 1, 1986 and (ii) the net intercompany position between [TRINOVA] and LOF Glass as of the Closing Date shall be eliminated by payment in accordance with the provisions of Sections 4.04(f) and (g). As of January 1, 1986 there is a net amount of $1,904,000 owing by the LOF Glass Business to [TRINOVA], representing the current federal, state and local income and franchise tax provisions with respect to the LOF Glass Business on a stand-alone basis. Said amount, to the extent not previously paid, shall be payable in cash by LOF Glass to [TRINOVA] at the Closing."

A. William Sweeney, J., dissenting.    Until today, this court has adhered to the long-held principle of contract law that writings executed as part of the same transaction should be read together. See Edward A. Kemmler Mem. Found. v. 691/733 E. Dublin-Granville Rd. Co. (1992), 62 Ohio St.3d 494, 499, 584 N.E.2d 695, 698; Ctr. Ridge Ganley, Inc. v. Stinn (1987), 31 Ohio St.3d 310, 314, 31 OBR 587, 590, 511 N.E.2d 106, 109; Thayer v. Luce (1871), 22 Ohio St. 62, paragraphs one and two of the syllabus; and White v. Brocaw (1863), 14 Ohio St. 339, paragraph three of the syllabus.

The majority's distinction embodied in the syllabus -- the so-called doctrine of "contract integration" -- ignores the fact that the TAA and SEA herein were executed at virtually the same time. The TAA was signed on March 6, 1986, while the SEA was signed on the very next day. To exalt a distinction such as that propounded by the majority opinion, which essentially renders the terms of the SEA unenforceable, defies logic, fairness and common sense.

Given the fact that the transfer between appellants and TRINOVA was voluminous and complex, I believe the majority errs in permitting the lower courts to exclude relevant evidence of the SEA and Closing Book which were executed and compiled in combination with the TAA. The maxim which is at stake in the

cause sub judice is one that this court so eloquently noted in another recent case: "Let the jury decide [the evidence]!" McFarland v. Bruno Mach. Corp. (1994), 68 Ohio St.3d 305, 312, 626 N.E. 2d 659, 664.

For these reasons, I would reverse the judgment of the court of appeals and remand the cause for a new trial, in order to let the jury consider the terms of the SEA in deciding the rights and liabilities of the instant parties.

Wright and Grady, JJ., concur in the foregoing dissenting opinion.