JOURNAL ENTRY and OPINION
This is a consolidated appeal from the order of the Cuyahoga County Court of Common Pleas Juvenile Division denying appellant/cross-appellee's Cuyahoga County Department of Children and Family Services (CCDCFS) motion for permanent custody of the three minor children of appellee/cross-appellant Renita Campbell (Campbell) and instead entering an order placing the children in a Planned Permanent Living Arrangement (PPLA) pursuant to R.C. 2151.415(A)(5). Campbell has filed a cross-appeal asserting that the trial court should have awarded her custody of the children subsequent to the hearing because of evidence that she complied with the case plan provided for her by CCDCFS and because CCDCFS made insufficient attempts to reunite her with her children. Because we find that the trial court did not abuse its discretion when it found by clear and convincing evidence that a PPLA was in the best interests of Campbell's children, we affirm the ruling of the trial court.
Appellee/cross-appellant Campbell is the mother of three minor children who were the subject of the permanent custody hearing conducted by the trial court, Rayshawn Campbell (d.o.b. 9/6/1985), Denise Campbell (d.o.b. 12/12/1986) and Deeshawn Campbell (d.o.b. 3/17/1990). On April 30, 1998, CCDCFS filed a complaint with the juvenile court alleging that the three children were neglected and seeking custody of the children. On June 8, 1998, the trial court granted CCDCFS's motion for pre-adjudicatory temporary custody. On November 5, 1998, CCDCFS filed a motion to modify temporary custody to permanent custody stating within that Campbell had failed to remedy the conditions which had caused the removal of her children from her home despite the reasonable efforts made by CCDCFS to assist Campbell in complying with the dictates of her case plan. A hearing was held on CCDCFS's motion over the course of two days, September 16, 1999 and December 7, 1999. On January 13, 2000, the trial court entered an order denying the motion to modify on the grounds that the allegations of the motion have not been proven by clear and convincing evidence. The order further committed the children to a PPLA, specifically finding that:
 Planned Permanent Living Arrangement of the Cuyahoga County Department of Children and Family Services is in the best interests of the children in that: * * *
 The parent(s) are unable to provide care for the children due to their own physical or mental problems or needs, adoption is not in the best interests of the children and the children retain a significant or positive relationship with a parent or relative.
The order also set November 10, 2000 for a Custody Review Hearing, to review the children's living arrangements and to assess Campbell's progress in complying with her case plan.
CCDCFS filed an appeal from the order of the trial court on January 26, 2000. Campbell cross-appealed from the trial court's order on February 10, 2000. On April 12, 2000, this court entered an order consolidating the two appeals for purposes of briefing, hearing and disposition.
This opinion shall not discuss the merits of the cross-appellant's four assignments of error because cross-appellant Campbell is prohibited, as a matter of law, from asserting that the trial court erred in placing the three Campbell children in a PPLA under the invited error doctrine as the appellant's trial counsel repeatedly requested of the trial court during the course of the hearing that the trial court take such an approach to the custody issue rather than returning custody of the children to Campbell.[1]
The "invited error doctrine" prohibits a party from raising an error on appeal which she herself invited or induced the trial court to make. State ex rel. Fowler v. Smith (1994), 68 Ohio St.3d 357, 359,626 N.E.2d 950; Center Ridge Ganley, Inc. v. Stinn (1987),31 Ohio St.3d 310, 313, 511 N.E.2d 106.
Prior to the hearing, Campbell's trial counsel informed the court that she had discussions with the attorney for CCDCFS concerning the possibility of the parties agreeing to a PPLA arrangement. The CCDCFS attorney at the hearing responded to these remarks on the record by acknowledging that such conversations had taken place and stating that, in his opinion, it was probably a close call as to whether permanent custody or a PPLA was the superior option. In her closing remarks at the hearing, Campbell's trial counsel never requested that custody of the children be returned to her client, but, rather, stated that a PPLA situation was the only viable alternative to granting CCDCFS's motion for permanent custody. During cross-examination of the various witnesses who testified, Campbell's trial counsel repeatedly attempted to elicit responses to the effect that a PPLA arrangement would be in the best interests of the children. The issue of the trial court's returning full custody of the children to Campbell was scarcely, if ever, broached. Campbell's trial counsel also did not file a motion with the trial court seeking to reinstate Campbell with custody of her children.
CCDCFS's four assignments of error are interrelated, and to a large degree redundant, as each involve identical issues of law and fact, and accordingly they will be addressed concurrently in this opinion. The four assignments of error state:
 I. THE TRIAL COURT ERRED WHEN IT DENIED THE MOTION FOR PERMANENT CUSTODY OF RAYSHAWN, DENISE AND DEESHAWN CAMPBELL, FILED BY THE CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, WHICH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE UNCONTROVERTED EVIDENCE PRESENTED AT TRIAL.
 II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO RENDER A DECISION AS TO WHETHER OR NOT PERMANENT CUSTODY WOULD BE IN THE BEST INTERESTS OF THE CHILDREN AFTER HEARING SUBSTANTIAL TESTIMONY WHICH SUPPORTED A FINDING THAT PERMANENT CUSTODY IS IN THE BEST INTERESTS OF THE CHILDREN.
 III. THE TRIAL COURT ERRED IN ORDERING THE CHILDREN PLACED IN PLANNED PERMANENT LIVING ARRANGEMENT, WHICH ORDER WAS NOT SUPPORTED BY THE EVIDENCE ADDUCED AT TRIAL AND WHICH EVIDENCE DID NOT SATISFY THE STATUTORY REQUIREMENTS AND CONDITIONS WHICH ALLOW A DISPOSITIONAL ORDER OF PLANNED PERMANENT LIVING ARRANGEMENT.
 IV. THE ORDER OF THE TRIAL COURT WHICH PLACES THE CHILDREN IN PLANNED PERMANENT LIVING ARRANGEMENT WHILE SIMULTANEOUSLY PROHIBITING ANY AND ALL CONTACT BETWEEN MOTHER AND CHILDREN WITHOUT RECOMMENDATION OF GUARDIAN AND THERAPIST IS A LEGAL CONTRADICTION, FRUSTRATES THE PURPOSE OF PPLA, AND IS TANTAMOUNT TO AN AWARD OF PERMANENT CUSTODY WITHOUT THE POSSIBILITY OF ADOPTION OF THE CHILDREN, AND IS THEREFORE AN ABUSE OF DISCRETION.
In a PPLA, the juvenile court grants a children services agency legal custody of a child without terminating the parent's parental rights. R.C. 2151.011(B)(27); Whipple v. Coffee (June 14, 2000), Summit App. No. 19902, unreported. The children services agency is then permitted to make an appropriate placement for the child and to enter into a written agreement regarding that placement. Id. Prior to placing the child in a PPLA, the juvenile court must find, by clear and convincing evidence, that a PPLA is in the best interest of the child and that:
 the parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
R.C. 2151.353(A)(5)(b).
"Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof." State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. Clear and convincing evidence is defined as "that measure or degree of proof which is more than a mere `preponderance of the evidence' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts to be established." In re Awkal (1994), 95 Ohio App.3d 309, 315, 642 N.E.2d 424.
R.C. 2151 governs the award of permanent custody of children who have been adjudicated abused, neglected or dependent. R.C. 2151.419 provides in pertinent part:
 (A)(1) Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28
* * * or * * * 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. * * * In determining whether reasonable efforts were made, the child's health and safety shall be paramount.
R.C. 2151.414 provides in pertinent part:
 (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353 or 2151.415 of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. * * * (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. * * * (D) In determining the best interests of a child at a hearing held pursuant to division (A) of this section * * * the court shall consider all relevant factors, including but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child.
(3) The custodial history of the child;
 (4) The child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code; * * * (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; * * * (12) Any other factors the court considers relevant.
It is undisputed that the best interests of the child are to be controlling in determining the disposition of an abused or neglected child. In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, 233,479 N.E.2d 257; In re Higby (1992), 81 Ohio App.3d 466, 469,611 N.E.2d 403. Prior to seeking permanent custody, an agency must make a good faith effort to implement a reunification plan. In re Angel Grant (Mar. 12, 1998), Cuyahoga App. No. 71046, unreported. A good faith effort has been determined to be "an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." In re Weaver (1992), 79 Ohio App.3d 59, 606 N.E.2d 1011. In making a custody determination, a court may not consider the effect that granting permanent custody will have on the parent of the child. R.C. 2151.414(C).
Whereupon hearing a motion requesting permanent custody of a child a court decides to deny the motion, the court may proceed in accordance with R.C. 2151.415 and make any disposition listed in that statute, including a PPLA. In re McDaniel (Feb. 11, 1993), Adams App. No. 92 CA 539, unreported.
In reviewing a trial court's determination of a disposition, an appellate court is to accord the trial court's discretion the utmost respect. Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124, 661 N.E.2d 1008. A reviewing court must take into account that "the knowledge gained through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Id. Pursuant thereto, the trial court enjoys the presumption that its findings were correct. Id.
"A court exercising Juvenile Court jurisdiction is invested with very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment." In re Pieper Children (1993),85 Ohio App.3d 318, 330, 619 N.E.2d 1059.
CCDCFS presented significant evidence that Campbell suffered from stress related symptoms that made it difficult for her to properly function as a parent, that she had neglected her children in the past and that she missed scheduled visitations, although it is not exactly clear from the record which party was at fault for the scheduling snafus which precipitated some of the missed visits. On the other hand, the trial court was correct in its assertion that the children retained a significant and positive relationship with their mother and that Campbell, while not ready to assume custody of her children, had made significant strides towards becoming a better parent and had completed most of her case plan, including completing a parenting class at the St. Martin DePorres Center and testing negative for drugs on all of her urine drops.
The trial court clearly was conflicted given the good intentions of Campbell, the children's fondness for their mother and the consensus among the social workers familiar with the family situation that Campbell was not yet sufficiently equipped at the time of the hearing to resume full time parenting duties. The trial court viewed the PPLA as a middle ground between granting CCDCFS's motion for permanent custody and reinstating custody of the children to Campbell. We do not choose to discourage this approach. Contrary to CCDCFS's assertions, this finding was not in contravention of either the wording or intent of the applicable statute. The trial court correctly recognized the potential for fostering a beneficial relationship between these three children and their mother sometime in the future and, accordingly, declined to grant permanent custody to CCDCFS at the time of the hearing. Yet, the trial court also expressly retained jurisdiction in the case in order to consider whether such a measure might be appropriate in the future if contact with their mother proved detrimental to the children.
The trial court's journal entry from which this appeal was taken expressly stated that CCDCFS's motion had not been proven by clear and convincing evidence, that it was in the best interest of the children that they be placed in a PPLA with the possibility of future contact with their mother, that Campbell was unable to provide care for the children due to [her] physical or mental problems, and that adoption was not in the best interests of the children. Accordingly, the trial court's entry fully complied with the dictates of R.C. 2151.353(A)(5)(b).
Given that even the attorney who represented CCDCFS at the custody hearing stated that it was a close call as to whether permanent custody or a PPLA was in the best interests of Campbell's three children, this court cannot conclude that the trial court abused its very broad discretion by ordering that the children be placed in a PPLA subject to the continued supervision of the court. In re Pieper Children, supra. Therefore the appellant's assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee/cross-appellant recover of appellant/cross-appellee her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _______________________ MICHAEL J. CORRIGAN JUDGE
TERRENCE O'DONNELL, P.J., and PATRICIA A. BLACKMON, J., CONCUR.
[1] The four assignments of error contained in Campbell's cross-appeal are as follows:
 I. CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE CAMPBELL CHILDREN.
 II. THE JUVENILE COURT ABUSED ITS DISCRETION WHEN ORDERING THE CAMPBELL CHILDREN COMMITTED TO A PLANNED PERMANENT LIVING ARRANGEMENT.
 III. CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES FAILED TO PRESENT CLEAR AND CONVINCING EVIDENCE THAT RENITA CAMPBELL FAILED TO REMEDY THE CONDITIONS WHICH CAUSED THE REMOVAL OF HER CHILDREN FROM HER HOME.
 IV. THE CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES DID NOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT IT MADE REASONABLE EFFORTS TO REUNIFY APPELLANT AND HER CHILDREN.