DECISION AND JUDGMENT ENTRY
Angela Wright appeals the trial court's order granting temporary custody of Joseph Leeth to the Ross County Children Services Agency and legal custody of Alex Wright to Doug and Kim Jarvis, the foster-parents. Ms. Wright assigns the following errors for our review.
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN PLACING ALEX IN THE LEGAL CUSTODY OF THE FOSTER PARENTS, WHO NEVER FILED A LEGAL CUSTODY MOTION PURSUANT TO R.C. 2151.353(A)(3).
 SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN FINDING, AS A MATTER OF LAW THAT THE AGENCY HAD EXERCISED REASONABLE EFFORTS TO EFFECT REUNIFICATION.
 THIRD ASSIGNMENT OF ERROR
 JUVENILE RULE 34, R.C. 2151.353 AND R.C. 2151.415
VIOLATE PROCEDURAL DUE PROCESS AND EQUAL PROTECTION OF THE UNITED STATES CONSTITUTION AND THE OHIO STATE CONSTITUTION IF THEY DO NOT REQUIRE THE RULES OF EVIDENCE TO APPLY IN PROCEEDINGS RESULTING IN LEGAL CUSTODY PLACEMENTS.
 FOURTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN FINDING THE AGENCY HAD PROVEN, BY SUFFICIENT, COMPETENT, AND CREDIBLE EVIDENCE THAT ALEX AND JOSEPH WERE STILL DEPENDENT, COULD NOT BE RETURNED TO THEIR OWN HOME.
 FIFTH ASSIGNMENT OF ERROR
 THE TRIAL COURT'S FINDINGS THAT THE AGENCY HAD EXERCISED REASONABLE EFFORTS TO EFFECT REUNIFICATION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 SIXTH ASSIGNMENT OF ERROR
 R.C. 2151.424, AS APPLIED IN THIS CASE, AND ON ITS FACE IS UNCOSNTITUTIONAL.
Finding no merit in any of the appellant's arguments, we affirm the trial court's custody orders.
 I.
Angela is the mother of five children. Jim Cox fathered Alex, who was born in 1997. Brad Sparks fathered Joseph, who was born in 1995. Randall Leeth fathered Christopher, who was born in 1990. Gerald Jenkins, who is deceased, fathered Gerald, who was born in 1987. Jerry McComis fathered Timothy, who was born in 1984.
Angela's contact with the Ross County Children Services Agency (the Agency) apparently began in the early 1990's; however, the circumstances leading to the present case arose in March 1999. At that time the Agency removed all five children from Angela's care and filed a dependency complaint based on disciplinary problems that the boys were experiencing at school, a lack of supervision by Angela, and poor home conditions.[1]
Initially, Angela denied the allegations of dependency, so the court set a May, 1999 trial date. In the interim, the children remained in the temporary custody of the agency with Angela receiving visitation. On the day of the adjudicatory hearing, Angela admitted the allegations of dependency and the Agency retained temporary custody of the children pending the dispositional hearing. However, Angela still retained visitation with the children. At the dispositional hearing, Randall Leeth received legal custody of Christopher; therefore, after establishing a visitation schedule with Angela, the Agency released Christopher from its protective services. Christopher remains in the legal custody of his father.
The rest of the children remained in the temporary custody of the Agency with Angela receiving frequent visitation, which included "extended home passes" with the children and visits at the Agency. Subsequently, the Agency placed Alex in foster care provided by Doug and Kim Jarvis. At the time of this placement, concerns began to surface regarding Alex's asthmatic conditions. Due to these health concerns, Alex resided with the Jarvis' during the week and returned to Angela for the weekend.
By the time of the October 1999 hearing, Angela had completed two different parenting classes and the Guardian ad Litem recommended that Timothy, Gerald, and Joseph return to her custody. However, the Guardian ad Litem and the Agency also expressed concerns about returning Alex to Angela's custody because Alex's asthma would be aggravated by the presence of the wood burning stove, dust and mold in the home, and Angela's continued smoking. The court continued this October hearing until November 1999 in order to receive all of the evidence. At the November hearing, the parties agreed that Angela should receive Alex for a two or three week period in an effort to determine whether the conditions of the home aggravated Alex's asthma. If that two or three week visit was successful, then visitation would increase gradually with the continuous goal of reuniting Alex, Angela, and the rest of the children. However, Gerald, Timothy and Joseph returned to Angela's custody, with the Agency retaining protective services.
Unfortunately, the Agency received reports of concern from the children's schools concerning deterioration of appearance, a slip in grades, and behavioral problems. Therefore, in early February 2000, the Agency once again requested temporary custody of Gerald, Timothy, and Joseph because they were considered at high risk. At this time, the Agency also requested that their temporary custody of Alex be extended due to his continuing problems with asthma and the concern that Angela was not properly giving Alex his medication.
In late April of 2000, the Agency made a motion on behalf of the Jarvis' for the legal custody of Alex because Angela was not meeting Alex's basic needs. The Agency continued to search for suitable relative placement for the rest of the children. The court conducted the legal custody and temporary custody hearings for the children in September and October 2000.
The uncontroverted evidence indicated that Angela completed two separate parenting classes, added an extension to the home, eventually replaced the wood burning stove with baseboard heaters, and began cleaning the home and yard more. However, the Agency still harbored reservations regarding Angela's parenting and supervision skills based on its observations during visitation, reports from school officials, and various home reports. Therefore, the court granted the Agency's motion for temporary custody for Joseph, Gerald, and Timothy and legal custody of Alex. Subsequently, the Agency placed Timothy and Gerald with relatives and Angela has not objected to their placement. Therefore, Alex and Joseph are the only children subject to this appeal.
 II.
In her first assignment of error, Angela argues that the trial court erred in granting legal custody of Alex to the foster parents. Angela argues that Alex's foster parents, Doug and Kim Jarvis, had to file a motion for legal custody under R.C. 2151.353(A)(3) before the court could grant legal custody to them. We find no merit in this argument.
As the appellant notes, R.C. 2151.353(A)(3) allows the trial court to grant legal custody of a child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child." However, this is not the sole means by which an individual may obtain legal custody. R.C. 2151.415(A)(3) permits a public children services agency with temporary custody of a child to file a motion for "an order that the child be placed in the legal custody of a relative or other interested individual."
While the Agency's motion does not specifically reference it, R.C.2151.415(A)(3) is applicable because the Agency still had temporary custody of Alex when it filed for legal custody on behalf of the Jarvis'. In fact, the Agency originally filed a motion to extend temporary custody and then filed the motion for legal custody. The trial court granted the motion for legal custody at a time when Alex was already in the temporary custody of the Agency. Therefore, we conclude that the Agency filed its motion under R.C. 2151.415(A)(3) on behalf of other interested individuals, namely the foster parents, and not under R.C. 2151.353(A)(3). The first assignment of error is overruled.
 III.
In Angela's second assignment of error she argues that the trial court erred as a matter of law in concluding that the Agency had exercised reasonable efforts to effect reunification. We read Angela's second assignment of error as challenging whether the court made specific findings that the appellant argues are mandated by law.
The magistrate made the following conclusion of law, which the trial court adopted: "2) The agency has continued to make reasonable efforts to reunify the children with their mother." In her second assignment of error, appellant argues that the reasonable efforts inquiry must include a specific "finding regarding the effect of the case plan and that continued removal of the children was reasonable(?)." While we have previously ruled that a reasonable efforts determination was not required under a motion for permanent custody, see In re Rowe (Jan. 30, 1998), Scioto App. No. 97CA2592, unreported, the current version of R.C.2151.413(D)(3)(b) mandates otherwise. See Gianelli, Ohio Juvenile Law
(2001 Ed.), Section 22.14.
Under R.C. 2151.419(B)(1) a court that makes a reasonable efforts determination must include a brief description of the relevant services provided by the agency and a statement concerning why those services were unsuccessful.[2]
We conclude that the trial court's entry that modified and adopted the Magistrate's decision, when read in its entirety, satisfies this requirement. That entry specifically referred to multiple services including parenting skills education, protective services, regular meetings with the mother, supervised visitation and home visits as being provided by the agency. The court's response to objection number two indicated that its review of the record substantiated the agency's claim that failure was based, at least in part, on the appellant's inability "to retain and put into practice the agency's suggestions." The court provided at least three specific examples: 1) appellant initially replaced the wood stove with another wood stove rather than a different source of heat; 2) her failure to cooperate with the Family Preservation Program; and 3) her failure to follow up on suggestions that she pursue Metropolitan Housing and Big Brothers/Big Sisters programs. While the court might well have provided a more detailed analysis, it substantially complied with the requirement of R.C. 2151.419(B)(1). We read these requirements as being designed to provide the parties with effective notice of the court's reasoning and to assist us in administering effective appellate review. While the court's reasoning is abbreviated, we conclude that it satisfies both of these purposes. Accordingly, we reject appellant's second assignment of error.
 IV.
In Angela's third assignment of error she argues that a court must apply the Ohio Rules of Evidence in a dispositional proceeding where legal custody is awarded. She contends that to do otherwise is a violation of her constitutional rights of due process and equal protection because legal custody is a permanent placement of the child. Initially, we reject the contention that legal custody is a permanent placement. See our discussion of legal custody under Section V.(A). Nonetheless, we will address the trial court's application of the Rules of Evidence.
The Rules of Evidence have limited applicability in most dispositional proceedings, see Evid.R. 101(C)(6) and Juv.R. 34(B)(2).[3] However, even though hearings on motions for permanent custody are dispositional in nature, the Rules of Evidence do apply in that context. See Juv.R. 34(B)(2) and Juv.R. 34(I).[4] See, also, Gianelli, Ohio Juvenile Law
(2001 Ed.), Section 22.9. Even though these proceedings did not involve permanent custody, the magistrate apparently applied the Rules of Evidence here ("it's a dispositional hearing, I'm bound by the rules of evidence on the dispositional hearing * * *.").
In spite of the magistrate's pronouncement, the appellant contends that the magistrate and court did not follow these rules. Specifically, she argues that the court improperly relied on the testimony of case workers that concluded appellant could not "retain" information. While she did not object at trial and arguably waived this purported error, she now complains about the lack of foundation for these opinions. In essence, she argues their opinions amounted to expert testimony that was not prefaced by the requisite foundation to establish their competency or expertise.
The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Wilmington SteelProducts, Inc. v. Cleveland Elec. Illum. Co. (1991), 60 Ohio St.3d 120,122, 573 N.E.2d 622, 624.
Evid.R. 701 permits lay witnesses to express opinions that are 1) rationally based on the witness's perception and 2) helpful to the determination of facts that are at issue.[5] Under the common law rule, witnesses were restricted to facts and not opinions. However, under a "collective facts" exception, witnesses were permitted to state their opinion of the mental state or condition of others. See Gianelli 
Snyder, Evidence (2nd Ed.), Section 701.4. Virtually all of the common law exceptions are now admissible under Evid.R. 701. Id. at Section 701.5. Accordingly, the courts have upheld opinion testimony that concluded a person was not able to think, and opinion testimony about another's emotional state or sanity. Id. (citations omitted). Because the case workers' opinions related solely to their perception of the appellant's ability to retain and process instructions, rather than to the underlying reasons for this apparent inability, we conclude that the trial court did not abuse its discretion in considering them, i.e. they satisfied both the requirements of Evidence Rule 701.
Appellant also attacks the use of hearsay testimony regarding Alex's medical condition. She refers to the testimony of Agency employees and the foster parents who are seeking custody. We again note the lack of a specific objection at trial, resulting in waiver of the issue.
Appellant implicitly contends that since the central issue in Alex's case was medical neglect, the Agency should have presented the testimony of a medical expert. Appellant tends to gloss over the fact that she admitted dependency in the adjudicatory stage. As mentioned below, the court did not need to relitigate dependency in the dispositional stage. Rather, the focus at that hearing is the child's best interest. While expert medical testimony might have been helpful, we do not believe it was necessary at this stage. Furthermore, to the extent that the appellant felt otherwise, she was free to offer expert medical testimony on her behalf, a strategy which she in fact pursued as can be seen by her Exhibit 7, which includes medical records. Moreover, appellant extensively explored the caseworkers opinions of the medical problems on cross examination. She cannot invite an error at trial and then complain about it on appeal. Center Ridge Ganley, Inc. v. Stinn (1987),31 Ohio St.3d 310, 313, 511 N.E.2d 106, 109. In sum, we conclude that lay testimony to the effect that the conditions that created the dependency still exist is admissible in the best interest context. See also, our discussion of the fourth assignment of error.
To the extent that appellant's concerns deal with the bias of the foster parents, that argument addresses the weight, not the admissibility, of their testimony. Credibility determinations are best left to the factfinder. In re Jane Doe 1 (1991), 57 Ohio St.3d 135,138, 566 N.E.2d 1181, 1184. Appellant's third assignment of error is meritless.
 V.
In her fourth assignment of error, Angela argues the trial court's finding that Alex and Joseph "were still dependent" is against the weight of the evidence. Apparently, appellant attempts to revisit the adjudication of dependency, to which she previously agreed. She seems to argue that the court had to re-determine that the children still met the statutory definition of dependency before it could make a dispositional order. She cites no authority for that proposition. To the contrary, R.C. 2151.35(B)(4) provides that if a child is adjudicated to be dependent, the court may proceed at the dispositional hearing to make any order described in R.C. 2151.353. Among those alternatives are committing the child to the temporary custody of a children services agency under R.C. 2151.353(A)(3). Granted, the court should consider the current circumstances and relationship between the parent and child when determining the child's best interest. However, absent some extraordinary circumstances or an inordinate lapse of time between the adjudication and the disposition, a court need not re-determine the dependency adjudication beyond that required by the best interest test that controls this stage of the proceedings. See R.C. 2151.415(B).
Within her fourth assignment of error, Angela also argues that the trial court's determinations granting legal custody of Alex and temporary custody of Joseph are against the weight of the evidence. Likewise, we find no merit in these arguments.
In the dispositional phase of dependency actions the best interests of the child determination controls. R.C. 2151.415(B); In re Cunningham
(1979), 59 Ohio St.2d 100, 105, 391 N.E.2d 1034. Here, the magistrate and the trial court specifically stated that their determinations were based on clear and convincing evidence and in the best interests of the children. Therefore, as long as there is some competent, credible evidence to support the trial court's determination, we are required to affirm it. See State v. Schiebel (1990), 55 Ohio St.3d 71, 74,564 N.E.2d 54, 60.
A. Legal Custody of Alex
We begin our analysis with a brief discussion of the differences between permanent, legal, and temporary custody. Under legal custody, the biological parents retain certain statutory residual rights so that all of their rights are not terminated. In addition, under R.C. 2151.417, the children involved in legal custody remain under the jurisdiction of the juvenile court. Therefore, the trial court may modify the order at any time or at the one-year review hearing. Lastly, under R.C. 2151.42, the biological parents retain the option of petitioning the court for modification of the award of legal custody.
Angela argues that legal custody amounts to a grant of permanent custody. This is simply not the state of the law. Permanent custody is a total termination of all parental rights and responsibilities. This means that the biological parents cannot be granted visitation and their consent is not necessary for the adoption of the child. In short, they retain no residual rights. However, we reiterate, a grant of legal custody does not terminate all parental rights and responsibilities. The biological parents must still consent to an adoption, are still permitted visitation with the child and can petition the court for a modification of custody.
The record contains evidence that Alex's medical problems have continued and even gotten worse in some instances, during periods when appellant had physical custody of Alex. The Agency has continually expressed concerns regarding whether Alex has been receiving all of his medication while in Angela's care. In fact, on one occasion, Angela borrowed prescription medication from a neighbor when she discovered that she did not have the needed medication to give Alex. The Agency has also continually expressed concerns about the effect of the home conditions upon Alex. Due to Alex's chronic asthma he cannot be exposed to extreme dust, mold, and cigarette smoke. However, evidence indicates that Angela continues to smoke around Alex. Evidence also indicates continuing concerns regarding the dusty and moldy conditions of the home.
This is not to suggest that Angela has not made significant improvements. Evidence shows that Angela has begun to clean the house more frequently and more thoroughly. Angela has also finally changed the heat source in the home from a wood burning stove to baseboard heating. Nevertheless, concerns persist regarding the quality of the home environment and its effect on Alex's health. Furthermore, it is undisputed that Alex has begun to thrive in the Jarvis' care. Therefore, there is some competent, credible evidence to support the trial court's determination that Alex's best interest requires placing him in the legal custody of Doug and Kim Jarvis.
However, efforts to effect reunification should continue, especially given the unique factual situations in this case. Kim Jarvis admitted during her testimony that her involvement in this case became personal and unprofessional in that she allowed herself to become attached to Alex. It also appears that the Jarvis' were the source of some, if not most of the evidence concerning Alex's medical problems. With this in mind, we suggest that the Agency pursue serious efforts to reunify Angela and Alex, apart from what was done in the past. Kim Jarvis has stated that it is her desire to facilitate communication and visitation between Alex and Angela while legal custody is vested with her. Therefore, there is no reason that reunification should not be attempted.
B. Temporary Custody of Joseph
School officials testified that after Gerald, Timothy, and Joseph were returned to Angela their appearance declined, their grades suffered, and they appeared lethargic and tired, often sleeping on the bus and in school.
Some concerns regarding Angela's parenting skills and supervision seem justified. On one documented occasion, Angela turned the oven on and opened the oven door in order to make it warmer in the home. Angela has also admitted in her briefs that she has a more difficult time supervising the children and keeping the house in a clean and orderly fashion when her mother, Daisy, is not present. The Agency has documented that Angela needs Daisy's assistance to keep the children supervised. In fact, on at least one extended occasion, while Daisy was away from the home tending to a sick friend, problems with the children began to arise. The Agency also has concerns that Angela is no longer living with Daisy and is now living with a new boyfriend. We are mindful that none of these concerns specifically mention Joseph. However, given the evidence in the record, including the long and documented history of problems and continued concerns for all of the children, we find no error in the trial court's conclusion that Joseph's best interest requires an award of temporary custody to the Agency.
Angela argues that In re Hiatt (1993), 86 Ohio App.3d 716,621 N.E.2d 1222 requires that an independent determination be made for each child. She is correct. See In re Hiatt, 86 Ohio App.3d at 725. However, we stated in Hiatt that multichild custody determinations should not be construed in a vacuum. Specifically, we stated "how a parent mistreats another child in the household can be very relevant to the permanent custody determination of a child that is not mistreated in the same manner." Id. We also stated in Hiatt that a child does not need to be placed in risk of immediate or unavoidable harm before a court determines that leaving the child in that environment is not in their best interest. Id. Thus, while appellant complains the only direct evidence relating to Joseph concerned his "brown teeth" and one event of missing the school bus, the court was justified in "looking at the big picture." We find no merit in the fourth assignment of error.
While it is clear from the record that Angela continues to have problems supervising and managing all of the children together, it does not appear that Angela has been given the opportunity to supervise and manage one child at a time. If Angela were given the opportunity to start by supervising only one child, for example Joseph, she may then be able to grow into caring for both Joseph and Alex. At some point, Angela may then be able to care for all of her children. That Angela cannot care for all of the children at once should not deter the Agency from attempting reunification with one child at a time. This strategy seems obvious to us in spite of the fact that the Agency has yet to pursue it.
 VI.
In her fifth assignment of error appellant contends the court's finding that the Agency used reasonable efforts to reunify the family is against the manifest weight of the evidence. The standard of review for weight of the evidence questions can be found in C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578 where the Court stated that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."Id. at syllabus. This deferential standard of review is necessary because the trial court is in the best position to judge the credibility of testimony due to its ability to observe the witness's demeanor, gestures and voice inflections. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 461 N.E.2d 1273. Moreover, we cannot reverse a judgment as being against the weight of the evidence merely because we would reach a different verdict. Tolliver v. Tyree (1963), 1 Ohio App.2d 72, 75, 30 O.O.2d 101, 203 N.E.2d 857, 859.
The record contains evidence to support the court's conclusion that the Agency's goal has always been to reunify the family. The Agency has prepared and attempted to implement a reunification plan. Supervised visitation at the Agency often resulted in "chaos." The Agency gave Angela extended home visits with all of the children and yet, the same problems have persisted without a noticeable improvement. Angela had an extended, two-three week "home pass" with Alex, during which he continued to experience asthmatic problems. While Angela has completed two separate parenting classes, concerns continue regarding her ability to supervise and properly parent the children. In fact, she did not pass the final test for the course taught by caseworker Helmick in spite of the oral format he used to avoid her reading problems. The second instructor also had strong concerns about her parenting skills.
Admittedly, the evidence indicates that Angela ultimately had an addition built onto her home and changed the heat source to baseboard heating. However, it appears that the wiring in the addition may not meet code requirements. The Agency found this to be troubling in light of the fact that Angela lost a prior home to a fire. Furthermore, these home improvements did nothing to alleviate the Agency's concerns regarding Angela's supervision and parenting skills.
The Agency also took extensive steps in attempting to locate all of the fathers involved. In fact, two of the children, Timothy and Christopher, were placed with their fathers. Timothy was removed after reports of abuse surfaced, but Christopher has been successfully placed in the legal custody of his father, Randall.
The Agency has also taken steps to place the children with relatives. Caseworker Helmick testified about the Agency's consideration of Angela's mother, brothers, cousins, and grandparents. He gave specific reasons why each was rejected. From the record before us, it appears that relative placement has been difficult due to the prior involvement of the Agency with the other relatives. In some instances the investigation of relatives revealed a criminal history, domestic violence or medical problems. However, Gerald and Timothy have been placed with relatives suitable to both the Agency and Angela. Therefore, the record contains some competent, credible evidence to support the trial court's findings that the Agency has made reasonable efforts to reunify Angela with her children. Angela's fifth assignment of error is overruled.
 VII.
In her sixth assignment of error the appellant contends that allowing foster parents to participate in the hearings impermissibly impinged upon her fundamental right to raise her children. This contention is premised on the assertion that the court permitted the foster parents to participate "prior to determining a parent's rights should be circumscribed(:)." However, she overlooks the fact that she admitted, and the court found, that the children were dependent. It is this finding of dependency that "circumscribes" or limits her paramount right to parent, not the foster parents subsequent participation in the dispositional process. Once a court finds a child to be dependent, the parent's unfettered right to raise the child must give way to the court's determination of the child's best interest. R.C. 2151.353, R.C. 2151.415
and Halloway v. Clermont Cty. Dept. of Human Services (1997),80 Ohio St.3d 128, 684 N.E.2d 1217; Miller v. Miller (1988)37 Ohio St.3d 71, 523 N.E.2d 846. Granted, the parent retains both procedural and substantive due process rights after a finding of dependency. However, appellant fails to explain how these procedural and substantive rights were improperly limited, other than to complain that allowing the foster parents to be heard prior to some judicial prescription of her paramount rights is improper. Because her argument is based upon a false factual premise, we reject it summarily. As she offers no other basis for finding the statute to be unconstitutional, her sixth assignment of error is overruled.
 VIII.
Having overruled all of Angela's assignments of error, we affirm the grant of temporary custody of Joseph to the Agency and the grant of legal custody of Alex to the Jarvis'. However, we remind the parties that efforts to reunify Joseph and Alex with Angela should continue. Angela should be given the opportunity to develop her parenting and supervision skills on a one — to — one basis. Angela and the foster parents should also be mindful that legal custody is not the same as permanent custody, therefore, Angela continues to have the residual statutory rights listed earlier, which include visitation with Alex.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment and Opinion.
Kline, J.: Concurs in Judgment Only.
[1] At the time of the removal and for most of the extended home visits, Angela lived with her mother, Daisy. According to the Agency, Daisy has proven to be instrumental in helping Angela care for the children.
[2] R.C. 2151(B)(1) states:
 A court that is required to make a determination as described in division (A)(1) or (2) of this section shall issue written findings of fact setting forth the reasons supporting its determination. If the court makes a written determination under division (A)(1) of this section, it shall briefly describe in the findings of fact the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from the child's home or enable the child to return safely home.
[3] Evid.R. 101(C)(6):
(C) Exceptions.
 These rules (other than with respect to privileges) do not apply in the following situations:
(6) Other rules.
 Proceedings in which other rules prescribed by the Supreme Court govern matters relating to evidence.
Juv.R. 34(B)(2):
 (B) Hearing procedure. The hearing shall be conducted in the following manner:
 (2) Except as provided in division (I) of this rule, the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence.
[4] (I) Bifurcation; Rules of Evidence. Hearings to determine whether temporary orders regarding custody should be modified to orders for permanent custody shall be considered dispositional hearings and need not be bifurcated. The Rules of Evidence shall apply in hearings on motions for permanent custody.
[5] Evid.R. 701:
 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.